Ruth HOLLEY, Administratrix of the Estate of Edward J. Holley, deceased, Libellant,

v.

THE Steamship MANFRED STANS-FIELD, her engines, boilers, etc., in rem, and Reederei Blumenfeld, G.M.B.H., in personam, Respondents.

REEDEREI BLUMENFELD, G.M.B.H., Petitioner,

v.

Joseph C. JETT, Respondent-Impleaded.

Joseph C. JETT and Reederei Blumenfeld, G.M.B.H., Petitioners,

v.

ELIZABETH RIVER TERMINALS, INC., Respondent-Impleaded.

No. 7802.

United States District Court
E. D. Virginia,
Norfolk Division.

July 11, 1960.

Fine, Fine, .Legum, Weinberg & Schwan, Norfolk, Va., for libellant.

Vandeventer, Black, Meredith & Martin, Norfolk, Va., for the S.S. Manfred Stansfield and Reederei Blumenfeld.

Jett, Sykes & Coupland, Norfolk, Va., for Joseph C. Jett.

. Williams, Cocke, Worrell & Kelly, Norfolk, Va., for Elizabeth River Terminals.

WALTER E. HOFFMAN, District Judge.

This case was previously before this Court at which time the libel was dismissed for reasons fully stated in an opinion reported in Holley v. The Manfred Stansfield, D.C.E.D.Va., 165 F.Supp. 660. On appeal, following the later decision in The Tungus v. Skovgaard, 358 U.S. 588, 79 S.Ct. 503, 3 L.Ed.2d 524, the United States Court of Appeals for the Fourth Circuit held that the negligence of the decedent would not completely bar a recovery under Virginia law as the death occurred on navigable waters. Holley v. The Manfred Stansfield, 4 Cir., 269 F.2d 317, 322. Certiorari was denied, Reederei Blumenfeld, G. M. B. H. v. Holley, 361 U.S. 883, 80 S.Ct. 154, 4 L.Ed.2d 119. In referring the matter back to this Court, the following language appears:

> "On remand it will become necessary for the court to make findings on unseaworthiness and failure to provide a safe place to work. While the District Court based its disposition of the case solely on the decedent's contributory negligence and found it unnecessary to decide other questions, unseaworthiness was discussed. We neither approve nor disapprove at this time any intimations in the District Court's opinion as to the law or the facts pertaining to this phase of the case, and the District Court is at liberty in its discretion to permit further testimony to be offered by either side."

In response to the Court's invitation, proctors for the several parties elected not to present further evidence with respect to liability. The matter was reargued on the basis of the prior transcript, which transcript was not available to the District Court at the time of preparation of the first opinion. Subject to brief comments hereafter noted, the Court, having examined the transcript, reaffirms all statements of fact as

related in its prior opinion. (165 F. Supp. 660.) The only material change in the status of the parties is that F. S. Royster Guano Co., Inc., a respondent-impleaded on the petition of Elizabeth River Terminals, Inc., was dismissed at the time of the previous hearing, and no appeal was taken from this order of dismissal.

■■ Without restating the facts in detail, it is sufficient to say that the vessel was not unseaworthy, and no negligence existed, by reason of the fact that the cargo of potash solidified during the voyage from Germany. The record does not reflect any appropriate method of preventing such action due to the hydroscopic nature of the cargo. When the vessel left Baltimore after partially discharging her cargo, it is true that the cargo was not trimmed, but it is unnecessary to consider this phase of the case as such failure, if any, was not even remotely connected with the fatal accident which claimed the life of the longshoreman. When we note that 20 hours had been required in unloading the No. 2–3 hatches prior to the accident, it is apparent that the condition of the cargo had been considerably changed at the time of the accident. It follows, therefore, that the failure to trim the cargo before leaving Baltimore for South Norfolk was not, and could not have been, a proximate cause of the accident.

Under all of the circumstances of this case a showing of negligence has not been established. The unseaworthy condition of the vessel as hereafter suggested was brought about by the action of the decedent, a longshoreman employed by the stevedore and highly regarded as an experienced operator of the "payloader". Notice of any unsafe condition justifying a recovery under the principles of negligence are lacking. As indicated by the former opinion, the master's refusal to permit the use of dynamite does not impress the Court as any justification for a recovery predicated upon negligence.

■ We turn to the issue of unseaworthiness. The vessel did become unseaworthy when the decedent, by his own actions in the use of the "payloader" and contrary to instructions from his superior, created an overhang of the solidified potash. Minutes later, in an effort to loosen the cargo by striking the solid mass with the "payloader", a block of potash approximately four feet square fell upon the decedent causing his death. The creation of the overhang, even though slight, brought about a condition of unseaworthiness and is recognized by experts in the field as a condition which should not exist and which rendered the vessel reasonably unfit for its normal function.

Thus we have the question squarely presented. May an injured party (or decedent's estate suing for the benefit of statutory beneficiaries) recover against the shipowner for injury (or death) occasioned by the unseaworthiness of the vessel when such unseaworthiness is caused and brought into effect solely by the action of the injured party (or decedent)?

In the recent case of Mitchell v. Trawler Racer, Inc., 362 U.S. 539, 80 S.Ct. 926, 943, 4 L.Ed.2d 941, the Supreme Court pointed out that there has evolved a complete divorcement of unseaworthiness liability from concepts of negligence; that the doctrine of "transitory" unseaworthiness is no longer a defense; that the obligation to provide a seaworthy vessel is absolute—a species of liability without fault—an absolute duty owing to all within the range of its humanitarian policy; and, finally, that liability for a temporary unseaworthy condition is the same as liability which attaches when the condition is permanent. As the dissenting opinion of Mr. Justice Frankfurter so aptly suggests:

"The only rational justification for its imposition is that the owner is now to be regarded as an insurer [for unseaworthiness] who must bear the cost of the insurance."

When we analyze the foregoing decision and compare Crumady v. The Joachim Hendrik Fisser, 358 U.S. 423, 79 S.Ct. 445, 3 L.Ed.2d 413, we come to the

conclusion that the shipowner is at least a qualified insurer as to all accidents which are proximately caused by an unseaworthy condition. The qualifications are that the vessel must be "in navigation"[1]; the person injured or killed must be one within the class to whom the warranty of seaworthiness is applicable[2]; a condition of unseaworthiness must, in fact, exist; and the injury or death must have been a proximate result of the unseaworthy condition[3].

In Grillea v. United States, 2 Cir., 232 F.2d 919, 923, Judge Learned Hand said:

> "It may appear strange that a longshoreman, who has the status of a seaman, should be allowed to recover because of unfitness of the ship arising from his own conduct in whole or in part. However, there is in this nothing inconsistent with the nature of the liability because it is imposed regardless of fault; to the prescribed extent the owner is an insurer, though he may have no means of learning of, or correcting, the defect."

The Grillea doctrine was cautiously received and frequently criticized, but the Supreme Court in Crumady, supra [358 U.S. 423, 79 S.Ct. 447], has given tacit approval to the principle that "stevedores themselves could render a ship *pro tanto* unseaworthy and make the vessel owner liable for injuries to one of them."

■ Irrespective of personal views, the law respecting the warranty of seaworthiness is clarified for better or for worse. As incongruous as it may seem, the fact that the unseaworthy condition was created and put into effect solely by the action of the decedent herein affords no defense to the shipowner under the teachings of Grillea, Crumady, and Mitchell.

The original opinion, as indicated, was prepared prior to the Crumady and Mitchell decisions. An excerpt from Berti v. Compagnie De Navigation Cyprien Fabre, 2 Cir., 213 F.2d 397, 400, was quoted with approval, the essence of which is that when the longshoreman's injuries result solely from the manner in which the work was done under the stevedore's supervision, the longshoreman has no recourse against the shipowner. The Berti case is at least of dubious vitality in light of Crumady and the trends established by more recent pronouncements of the United States Supreme Court.

Nor do we believe that the language in Morales v. City of Galveston, 5 Cir., 275 F.2d 191, 193, will bear the stamp of approval in light of Mitchell v. Trawler Racer, Inc., supra. The latter decision establishes harsh law but clearly distinguishes negligence and unseaworthiness —a point that the Fifth Circuit fails to acknowledge in Morales where it is stated that liability for unseaworthiness is a species of liability without fault, and then gratuitously adds the words "in the sense of negligence."

■ It has long been recognized that the ship and her owners are not insurers of the safety of men working aboard the vessel. That an accident-free ship is not required is acknowledged in Mitchell, supra. The reason is that men on board a vessel are frequently injured without any disclosure of any facts resembling an unseaworthy condition. But the vessel and owner are liable to indemnify a seaman, or one within the appropriate class, for injury caused by unseaworthiness of the vessel or its appurtenant appliances and equipment, McAllister v. Magnolia Petroleum Co., 357 U.S. 221, 78 S.Ct. 1201, 2 L.Ed.2d 1272, i. e., the vessel and its appurtenant appliances, equipment, gear, etc., must be free of defects and reasonably fit for its intended purpose at the time of the accident. So it is that in this

---

1. West v. United States, 361 U.S. 118, 80 S.Ct. 189, 4 L.Ed.2d 161.

2. Kermarec v. Compagnie Generale, Transatlantique, 358 U.S. 625, 629, 79 S.Ct. 406, 3 L.Ed.2d 550.

3. The Osceola, 189 U.S. 158, 23 S.Ct. 483, 47 L.Ed. 760.

case the creation of a slight overhang in the mass of solidified potash produced a dangerous condition. The duty upon the shipowner was absolute and continuing [4], and could not be delegated [5] or excused by turning over a part of the vessel to another [6]. As Norris states in his recent book on The Law of Maritime Personal Injuries, § 36, p. 85:

> "For the 'instantaneous act' makes the vessel just as unseaworthy to the injured person, as it would if the defective condition was put into motion a minute or an hour before the time of injury."

Apparently the author was predicting the outcome of Mitchell v. Trawler Racer, Inc., supra.

For the foregoing reasons we come perforce to the conclusion that, subject to the qualifications herein stated, the vessel and owner are insurers for injuries or death proximately resulting from the unseaworthiness of the vessel, its appurtenances, equipment or gear.

■ The maximum amount recoverable under Virginia law as of the date of decedent's death was $25,000. In the absence of any contributory negligence on the part of decedent, this would be an appropriate award. In applying the rule of comparative negligence, and with regard to the admonition of Mr. Justice Holmes in Schlemmer v. Buffalo, Rochester, etc., Ry. Co., 205 U.S. 1, 12–13, 27 S.Ct. 407, 51 L.Ed. 681, this Court attributes the creation of the unseaworthy condition as an obligation of the shipowner, but charges the decedent with activating that condition which resulted in his death. Measuring the extent to which the decedent's negligence contributed to his death at fifty per cent, an award in the sum of $12,500 will be made, payable to the decedent's widow to the exclusion of the infant child.

We reach, finally, the indemnity feature. The shipowner contracted with Jett, the owner of the cargo, for the latter to unload the vessel. Elizabeth River Terminals agreed to discharge the cargo at South Norfolk for Jett. Under the recent decisions [7] it is clear that the ultimate liability must pass to Elizabeth River Terminals, the expert stevedore who breached its warranty of workmanlike service.

A decree will be submitted in accordance with this memorandum which is adopted by the Court in lieu of specific findings of fact and conclusions of law pursuant to General Admiralty Rule 46½, 28 U.S.C.A. Claims for indemnification by way of attorney's fees and costs in behalf of the shipowner and Jett may be reserved for further consideration after the exhaustion of appellate proceedings or, at the request of proctors, may be fixed under the terms of the decree.

The record reveals that certain compensation benefits have been paid, and presumably are still being paid, to decedent's widow under the Longshoremen's and Harbor Workers' Compensation Act, 33 U.S.C.A. § 901 et seq., but the sums so paid are not before the Court and no action need be taken with respect to same.

4. Mahnich v. Southern S.S. Co., 321 U.S. 96, 64 S.Ct. 455, 88 L.Ed. 561; Seas Shipping Co. v. Sieracki, 328 U.S. 85, 66 S.Ct. 872, 90 L.Ed. 1099.

5. Crumady v. The Joachim Hendrik Fisser, 358 U.S. 423, 427, 79 S.Ct. 445, 3 L.Ed.2d 413.

6. Alaska Steamship Co., Inc. v. Petterson, 347 U.S. 396, 74 S.Ct. 601, 98 L. Ed. 798.

7. Ryan Stevedoring Co. v. Pan-Atlantic S.S. Corp., 350 U.S. 124, 76 S.Ct. 232, 100 L.Ed. 133; Weyerhaeuser S.S. Co. v. Nacirema Operating Co., 355 U.S. 563, 78 S.Ct. 438, 2 L.Ed.2d 491; Crumady v. The Joachim Hendrik Fisser, 358 U.S. 423, 79 S.Ct. 445, 3 L.Ed.2d 413.