Emanuel VAN CARPALS, Libelant-Appellant,

v.

THE S.S. AMERICAN HARVESTER, United States Lines Company, Claimant-Respondent-Appellee,

Todd Shipyards Corporation, Respondent-Impleaded.

No. 51, Docket 27046.

United States Court of Appeals Second Circuit.

Submitted Nov. 2, 1961.

Decided Dec. 13, 1961.

Rehearing Denied Jan. 10, 1962.

Simone N. Gazan, New York City, for libelant-appellant.

Robert P. Hart, Thomas Coyne, of Kirlin, Campbell & Keating, New York City (Patrick J. Gilmartin and Charles N. Fiddler, New York City, on the brief), for claimant-respondent-appellee.

Patrick E. Gibbons, of Terhune, Gibbons & Mulvehill, New York City, for respondent-impleaded.

Before CLARK, HINCKS, and FRIENDLY, Circuit Judges.

CLARK, Circuit Judge.

Libelant Van Carpals appeals from dismissal of his libel for damages for personal injuries sustained on the SS "American Harvester" while he was working as a shore mechanic for Todd Shipyards Corporation, which had been employed by United States Lines Company, the shipowner, to prepare the ship's pipes and valves for inspection by the Coast Guard. The district judge found the facts as follows:

"The boilers of claimant's steamship were being subjected to a periodic examination by the Coast Guard. The libelant was removing a bonnet from a valve preparatory to its being examined. There were 8 bolts connecting the bonnet to the valve. After he loosened up four of the nuts, some water escaped, and libelant notified his snapper. The snapper said he would have the water shut off. In the meantime, the libelant and the snapper went to lunch. When they returned the snapper told the libelant that the lines were clear, and the libelant unscrewed all 8 nuts and pried the bonnet loose from the valve with the aid of a screwdriver. Nothing came out at the time.

"Libelant went up on top of the boiler to be in a better position to pull the bonnet off. When the bonnet came off, steam and then hot water gushed forth from the valve, burning the libelant."

There was also testimony from the "snapper" or foreman, as well as from the first engineer, that with the gauges disconnected after the initial pressure had been noted, a check then showed no pressure on the line; and they both appear at a loss to understand how the water later could escape from the valve. So the trial judge said, "This appears to be the type of unexplained accident for which liability cannot be predicated on negligence"; and he held that, since the checks showed an absence of pressure, the vessel was not unseaworthy. Accordingly he dismissed the libel.

1. In his memorandum of decision the trial judge complains that there was no allegation of unseaworthiness in the libel. But in federal pleading there is no need to plead legal conclusions; these are for the court to apply. And the question became academic when the court reopened the case expressly for the purpose of considering the claim of unseaworthiness.

We disagree and hold that under prevailing law the vessel must be held unseaworthy.[1] Though the cause of the accident may be inexplicable, yet it, and the way it occurred, demonstrated that the valve was actually not in a safe condition for the work needed to be done upon it. The trial court believed that the independent tests made to double check the gauges and the fact that libelant saw no signs of pressure negated an unseaworthy condition. But we do not think that follows. The accident occurred; there was steam in the valve; and it erupted. These conceded physical facts imperatively required a finding of unfitness for the task in hand. Thus a conclusion of unseaworthiness should have been reached irrespective of the proofs tending to absolve the owner of negligence.

Thus the situation falls within the "absolute" duty of the shipowner to furnish a seaworthy ship which "is essentially a species of liability without fault, analogous to other well known instances in our law." Seas Shipping Co. v. Sieracki, 328 U.S. 85, 94, 66 S.Ct. 872, 90 L.Ed. 1099, quoted in Mitchell v. Trawler Racer, Inc., 362 U.S. 539, 549, 80 S.Ct. 926, 932, 4 L.Ed.2d 941, which has now settled the law we must apply. The Mitchell case points out that since Sieracki the Court's decisions "have undeviatingly reflected an understanding that the owner's duty to furnish a seaworthy ship is absolute and completely independent of his duty under the Jones Act to exercise reasonable care"; that it applies equally to a condition arising after the vessel leaves her home port as before, or to one which may be only temporary; that it applies to defective equipment temporarily brought on board by an independent contractor over which the owner had no control; and that the latter's actual or constructive knowledge is not essential to his liability. "What

has evolved is a complete divorcement of unseaworthiness liability from concepts of negligence. To hold otherwise now would be to erase more than just a page of history." 362 U.S. 539, 549, 550, 80 S.Ct. 933.[2] See also Michalic v. Cleveland Tankers, Inc., 364 U.S. 325, 327, 81 S.Ct. 6, 5 L.Ed.2d 20, and our own decision in Sprague v. The Texas Co., 2 Cir., 250 F.2d 123.

It thus appears clear to us that the shipowner cannot wipe out this "absolute" duty by saying that he does not know what caused the particular accident or suggesting in effect that it was an act of God. Libelant claims reliance upon the tort doctrine of *res ipsa loquitur*. That doctrine may be applicable in ship cases, cf. Johnson v. United States, 333 U.S. 46, 49, 68 S.Ct. 391, 92 L.Ed. 468; but here resort to it as normally conceived is not necessary. For it is customary to state certain requirements for or limitations upon the application of *res ipsa loquitur*—such as that the accident would not ordinarily occur without negligence, that the defendant has exclusive control of the injuring agency, that the accident would have happened without any act by plaintiff, and that it only creates something in the nature of a permissible inference, 2 Harper & James, The Law of Torts 1075–1107 (1956)—which have no place (or are automatically supplied) in the absolute duty of the shipowner (quite apart from theories of negligence) to provide a seaworthy ship. Under the circumstances here disclosed of substantial injury from a failure of the ship's machinery, which demonstrates that it was unfit for its intended use, the breach of duty is clear. The dismissal of the libel must therefore be reversed and the action remanded for the fixing of the amount of libelant's damages.

Claimant, United States Lines Company, has taken what it terms a "pro-

2. The Court went on to say: "What has been said is not to suggest that the owner is obligated to furnish an accident-free ship. The duty is absolute, but it is a duty only to furnish a vessel and appurtenances reasonably fit for their intended use. The standard is not perfection, but reasonable fitness; not a ship that will weather every conceivable storm or withstand every imaginable peril of the sea, but a vessel reasonably suitable for her intended service." 362 U.S. 539, 550, 80 S.Ct. 933. But as the Court is at pains to point out, this has reference merely to the standards set for the ship and its appliances, and not to the duty, which remains absolute. Thus it is an absolute duty to furnish a reasonably fit ship—a duty not performed here.

tective" appeal from the dismissal of its claim for indemnity against Todd, which it cited in as third-party defendant. We see no basis upon which the shipowner here may pass on its liability for the unseaworthy condition of its vessel to the repairer. Compare Weyerhaeuser S.S. Co. v. Nacirema Operating Co., 355 U.S. 563, 78 S.Ct. 438, 2 L.Ed.2d 491; Crumady v. The Joachim Hendrik Fisser, 358 U.S. 423, 428–429, 79 S.Ct. 445, 3 L.Ed. 2d 413; and Calderola v. Cunard S.S. Co., 2 Cir., 279 F.2d 475, 477–478, certiorari denied Cunard S.S. Co. v. John T. Clark & Son, 364 U.S. 884, 81 S.Ct. 172, 5 L.Ed.2d 104.

Dismissal of libel reversed, and action remanded for award of damages to libelant; dismissal of claim for indemnity against impleaded defendant, Todd Shipyards Corporation, affirmed.

On Petition for Rehearing.

PER CURIAM.

■ Respondent-appellee American Harvester now claims that Van Carpals, the employee of an independent contractor, was not within the reach of the doctrine of Seas Shipping Co. v. Sieracki, 328 U.S. 85, 66 S.Ct. 872, 90 L.Ed. 1099. For this contention it relies chiefly on United New York and New Jersey Sandy Hook Pilots Ass'n v. Halecki, 358 U.S. 613, 79 S.Ct. 517, 3 L.Ed.2d 541; West v. United States, 361 U.S. 118, 80 S.Ct. 189, 4 L.Ed.2d 161, and Filipek v. Moore-McCormack Lines, 2 Cir., 258 F.2d 734, certiorari denied 359 U.S. 927, 79 S.Ct. 605, 3 L.Ed.2d 629. The reliance is misplaced: in all three cases the work being done and the functional relation between ship and worker were in no way analogous to that between ship and seaman. In contrast with these cases, the ship here was not withdrawn from navigation; the inspection was routine; and the removal of a valve bonnet is an ordinary maintenance operation. Cf. Sprague v. Texas Co., 2 Cir., 250 F.2d 123.

■ In another aspect of its petition the respondent-appellee seems not to realize that, upon the ascertainment of the facts, deduction of unseaworthiness is a conclusion of law, reviewable as such. Krey v. United States, 2 Cir., 123 F.2d 1008.

Petition denied.