**Frank PUDDU, Plaintiff-Appellant,**

v.

**ROYAL NETHERLANDS STEAMSHIP COMPANY, Defendant and Third-Party Plaintiff-Appellee,**

v.

**MAUDE JAMES, INC., Third-Party Defendant-Appellee.**

**No. 119, Docket 27095.**

United States Court of Appeals Second Circuit.

Argued Dec. 5, 1961.

Decided Jan. 3, 1962.

Petition for Rehearing in Banc Denied Feb. 20, 1962.

Reconsideration of Denial of Petition for Rehearing in Banc May 15, 1962.

Nicholas A. Scibilia, Brooklyn, N. Y. (DiCostanzo, Klonsky & Sergi, Brooklyn, N. Y., of counsel), (Robert Klonsky, Brooklyn, N. Y., on the brief), for plaintiff-appellant.

George J. Conway, New York City (Michael J. Kenny, New York City, on the brief), for defendant and third-party plaintiff-appellee.

Before WATERMAN, SMITH and MARSHALL, Circuit Judges.

WATERMAN, Circuit Judge.

Appellant, a longshoreman, was in the employ of the stevedore corporation, Maude James, Inc., when that corporation was loading refrigerator cargo into a reefer hatch of defendant's vessel, M.S Helena. Plaintiff, during this operation, was the gangwayman standing by. Presumably, if there were need to give signals to winchmen, that would have been appellant's function. Appellant was injured when one of the booms, part of the ship's equipment with which the longshoremen were working, buckled and broke.

Appellant brought suit against defendant Royal Netherlands Steamship Company, the owner of the vessel, alleging negligence and unseaworthiness.[1] Three other members of the stevedore gang were also injured and commenced actions against the defendant. The case of one of these other longshoremen was to be tried by a judge with jury, and appellant stipulated that his case be tried simultaneously by that same judge sitting without jury.

In the jury case there was a verdict for the defendant after a prolonged trial. Thereafter in appellant's case the trial judge filed a written opinion containing findings of fact and conclusions of law and entered a decree dismissing the action. From this decree, adverse to him, the longshoreman appeals.

■■ In order to prevail, appellant must satisfy us that the findings below are clearly erroneous and that, though there may be evidence to support them, we are left, after reviewing the entire evidence, with the definite and firm conviction that a mistake was committed. McAllister v. United States, 348 U.S. 19, 20, 75 S.Ct. 6, 99 L.Ed. 20 (1954). This

burden appellant has failed to carry. The cause of the buckling of the boom was the major issue before the trial judge. The eyewitness and expert evidence introduced by plaintiff and the stevedore corporation tended to show that the boom was defective and that it was not reasonably fit for the purpose for which it was used, and that the stevedore gang was doing its work at the time of the buckling in a normal and proper manner. Hence plaintiff claimed that his injury was caused by the negligence of the defendant and the unseaworthiness of the M.S. Helena in that she was equipped with a defective boom. Defendant's eyewitness and expert evidence tended to show that the boom was in good serviceable condition and was caused to buckle by the negligent conduct of the members of the stevedore gang in failing properly to handle the ship's gear. Resolving the conflicting testimony the trial judge found that the accident occurred while the stevedore gang was raising a rain tent that had been placed over the reefer hatch the previous day, and that in doing so the longshoremen caused the falls of the winch to be stretched to an angle of almost 180 degrees, a maneuver called "high lining," which resulted in an unusual and dangerous stress on the boom and was the sole cause of its collapse.

The court therefore concluded after considering the conflicting testimony of the eyewitnesses and the experts that the sole cause of the buckling of the boom was the negligent conduct by the longshoremen of the stevedore operations; that inasmuch as the owner of the vessel was in no way responsible for the conduct of these operations it was not negligent with respect to any duty it owed Puddu, and that inasmuch as the ship's equipment with which the stevedore gang was work-

---

1. Plaintiff sued Royal Netherlands Steamship Company only, and thereafter that defendant interpleaded as a third party defendant plaintiff's employer, Maude James, Inc., setting forth that, in the event the steamship company should be found liable to the longshoreman the stevedore company in turn should be held liable to the steamship company on its

implied warranty that it would perform its stevedoring work in a reasonably careful and prudent manner. The third party defendant put in evidence on its own account at trial. Inasmuch as the trial court dismissed the plaintiff's case, the case of the defendant against the third party defendant was ordered dismissed without prejudice.

ing was in good serviceable and workable condition, the M.S. Helena was not unseaworthy.

■ One of the ship's crew was an eyewitness, and he testified for the defendant. The trial judge made no findings with respect to this circumstance; and appellant would have us hold that the seaman's presence there caused his employer, the steamship company, to have some responsibility in connection with the stevedoring operations. It is uncontradicted that this crewman was present under orders to prevent cargo pilferage by the longshoremen and had no other duty. Merely stating the admitted reason for the presence of this able-bodied seaman disposes of appellant's tenuous argument.

Bound as we are by the rule in McAllister, supra, we can find no ground upon which to reverse the findings and conclusions below and therefore affirm the decree.

Plaintiff is not entirely uncompensated for the injury he suffered, as he is entitled to receive payments under the Longshoremen's and Harbor Workers' Compensation Act, 33 U.S.C.A. § 901 et seq.

Affirmed.

### Petition for Rehearing in banc

Before LUMBARD, Chief Judge, and CLARK, WATERMAN, MOORE, FRIENDLY, SMITH, KAUFMAN, HAYS and MARSHALL, Circuit Judges.

### PER CURIAM.

All of the active judges concurring, except Judge CLARK, who dissents, the application is denied.

CLARK, Circuit Judge (dissenting).

This is another of the several cases before the court at this term putting in issue the question of a vessel's unseaworthiness as a basis for liability to an injured seaman or longshoreman working upon it. The various panels of the court have been in disagreement on this important issue and, in this writer's view, some have shown an unwillingness to accept the Supreme Court's present conception of unseaworthiness. See, as upholding denial of liability, Pinto v. States Marine Corp., 2 Cir., 296 F.2d 1, 8; Hooper v. Terminal S.S. Co., 2 Cir., 296 F.2d 281; Ezekiel v. Volusia S.S. Co., 2 Cir., 297 F.2d 215; and the present case; and as reversing such a holding below, Van Carpals v. S.S. American Harvester, 2 Cir., Dec. 13, 1961, rehearing denied Jan. 10, 1962, 297 F.2d 9, and Massa v. C. A. Venezuelan Navigacion, 2 Cir., 298 F.2d 239. In order to avoid discrimination and unfairness among litigants because of differing views among panels we should make an attempt to resolve these differences so far as we can by consideration *in banc*. Indeed, this seems really necessary because in the view of at least a vigorous minority of the Supreme Court that Court should not take this class of cases on review. See, e. g., the dissent in Crumady v. Joachim Hendrik Fisser, 358 U.S. 423, 429, 79 S.Ct. 445, 3 L.Ed.2d 413. Further, the authority of the Crumady precedent cannot be overlooked; there on closely analogous facts the Court reversed the holding below, 3 Cir., 249 F.2d 818, to hold that the vessel had become unseaworthy through the negligence of the stevedoring company and hence liable to the longshoreman for his injuries.

Plaintiff, a member of a stevedore gang for the unloading of cargo, was injured when one of the booms being used in the operation buckled and fell with its rigging on him. The stevedores were removing a rain tent from the No. 4 hatch of the M/S Helena. Two booms were being used for the operation. The port, or up and down, boom was spotted over the hatch, while the Burton boom was angled out over the dock. Each boom had a winch, and from this winch a cable ran to the head of the boom and thence toward the other boom. These cables ("falls") were joined ("married") at a point between the two booms, and at that point a cargo hook was attached. The tent, which weighed 682 pounds wet, was

attached to this hook. Thus the married falls formed a V, with the tent and hook hanging from the apex and the heads of the booms at the points. The tent was large for the hatch, and the stevedores, as the court found, negligently failed to bundle it; thus when lifted, it hung down a considerable distance from the center point of the falls.

The method of moving the tent to the dock was apparently as follows: the winch on the up and down boom would be tightened, thus raising the tent from the hatch; following this the winch on the Burton boom would be tightened and that on the up and down boom slackened, so that the tent would be moved out over the side. In the course of this operation it became necessary to raise the unbundled tent rather high to clear the hatch coaming and deck obstacles. As the up and down boom was short relative to the size of the tent, this meant that the internal angle of the V formed by the falls was increased. The district judge found that this resulted in high lining or tight lining the rig; that is, that the internal angle of the falls approximated 180 degrees, so that the two winches could, if they were both tightened, work directly against one another, thus greatly increasing the stress on the booms. He further found that the sole cause of the breaking of the boom was the high lining or tight lining, which put excessive strain on the boom. Since he found that the stevedores who were operating the winches were thus negligent, and their negligence was the sole cause of the buckling of the ship's gear, which was otherwise found to be in good, serviceable, and workable condition, he held that the Helena was not unseaworthy.

Contrary to these conclusions it would seem, even on the facts as found, that we have here a classic situation of unseaworthiness: a dangerous condition, namely, a tight lined rig which would potentially overstress the boom. This condition led to the boom's collapse, and thus to plaintiff's injury. It is true that on the findings this condition was created not by conduct of the shipowner, but by the negligence of the stevedores themselves; but we have long recognized that this fact in no way reduces the shipowner's absolute liability. Grillea v. United States, 2 Cir., 232 F.2d 919; Rich v. Ellerman & Bucknall S.S. Co., 2 Cir., 278 F.2d 704. While this condition was a short-lived one, arising only a few minutes at best before the boom buckled, it is nevertheless unseaworthy, for it is now established beyond peradventure that transitory defects such as, for example, slime on a rail or cargo improperly stowed a few moments before the accident constitute unseaworthy conditions. Mitchell v. Trawler Racer, Inc., 362 U.S. 539, 80 S.Ct. 926, 4 L.Ed.2d 941; Knox v. United States Lines Co., 3 Cir., 294 F.2d 354 (dictum); Holley v. Manfred Stansfield, D.C.E.D.Va., 186 F.Supp. 212.

Of course, were it true that a shipowner must have actual or constructive notice of a dangerous condition before it becomes an unseaworthy one, we might hesitate to declare this rig unseaworthy. But Mitchell v. Trawler Racer, Inc., supra, 362 U.S. 539, 80 S.Ct. 926, 4 L.Ed.2d 941, held that notice was not a prerequisite of unseaworthiness, and thus the time during which a condition had existed was irrelevant to the question whether the ship was unseaworthy. Since such notice seems the only basis for those earlier decisions suggesting that a condition had to exist for a certain time before it became unseaworthy, any lines we might now draw based on time would be purely arbitrary. Thus the time should make no difference here. See Knox v. United States Lines Co., supra, 3 Cir., 294 F.2d 354. Compare Titus v. The Santorini, 9 Cir., 258 F.2d 352, a perceptive pre-Mitchell opinion reaching the opposite conclusion because of the time factor. The fact that the boom, found to be in good condition before the start of the married falls operation, buckled as it did rebuts any claim that the rig was reasonably fit for its intended use. Thus I believe that on the facts as found the district court erred in

holding that the ship was not unseaworthy.

But even if I believed that the time the condition had existed would make a difference in determination of liability, I would nevertheless believe that a rehearing is necessary. In the first place the opinion seems to say that if the negligence of the longshoreman alone creates a danger that condition can never be unseaworthy. Thus the panel has overruled sub silentio and without discussion the oft-cited opinion of Judge L. Hand in Grillea v. United States, supra, 2 Cir., 232 F.2d 919—an opinion cited with approval by the Supreme Court in Crumady v. Joachim Hendrik Fisser, supra, 358 U.S. 423, 79 S.Ct. 445, 3 L.Ed.2d 413—to adopt a position that Judge Hand in Grillea rejected as erroneous. 2 Cir., 232 F.2d 919, 922. Moreover, the district judge treated the question of unseaworthiness as one of fact, thus going directly against our rulings that unseaworthiness (like negligence) is a question of law. Van Carpals v. S.S. American Harvester, supra, 2 Cir., Jan. 10, 1962, 297 F.2d 9 (rehearing denied) ; Krey v. United States, 2 Cir., 123 F.2d 1008. Cf. Romero v. Garcia & Diaz, Inc., 2 Cir., 286 F.2d 347, 355, certiorari denied 365 U.S. 869, 81 S.Ct. 905, 5 L.Ed.2d 860. And the panel seems to agree with the trial judge, for its opinion, too, treats the appeal as raising only questions of fact, not to be reviewed under the rule in McAllister v. United States, 348 U.S. 19, 75 S.Ct. 6, 99 L.Ed. 20. A final error that must be noted is that the trial court took the jury's findings in the case of Ciacci, another longshoreman injured in the present accident, and felt bound to apply here the jury's special verdict there rendered that the Helena was not unseaworthy. But the stipulation was that the Puddu case was to be tried simultaneously by the same judge sitting without the jury and on the evidence submitted, not that the Ciacci result would control here. Clearly that should be the extent of the stipulation, for the two cases presented several points of dissimilarity, including Ciacci's active negligence in trying as winchman to raise the unbundled tent. Even though these differences might have a limited effect in law, it would be natural for the jurors to react against a negligent plaintiff. In any event Puddu, whose case was not triable to a jury, was entitled to the independent decision of a judge.

In the analysis I have made above I have confined myself strictly to the findings made below as to the equipment and the actions of the longshoremen and have not gone into other matters, such as the earlier breakdown of the starboard winch that day or the adequacy for the work in hand (notwithstanding the elaborate high-lining theory accepted below) of a short boom incapable of fully raising its load without breaking. For even on the facts as found the conclusion of unseaworthiness is so directly indicated that correction upon rehearing seems imperative. To add to the unreality of the legal situation as now left, it is to be noted that after the trial below another longshoreman, D'Agosta, one of those held to be actively negligent as a winchman, recovered a jury verdict which was upheld by Judge Murphy, the presiding judge. The defendant says, by way of explanation, that there "the facts were oriented to follow the Crumady decision," which makes the situation more bizarre than ever. If I understand what is meant it would seem that Puddu has lost because of failure of counsel and the court to follow the teachings of the Crumady case. I suggest that it would be difficult to explain to the injured Puddu and his dependents why he failed where an actively negligent associate has recovered. This affords a further and quite practical reason why a rehearing is necessary in the interest of justice.

Before LUMBARD, Chief Judge, and CLARK, WATERMAN, MOORE, FRIENDLY, SMITH, KAUFMAN, HAYS and MARSHALL, Circuit Judges.

PER CURIAM.

The merits of this appeal were orally argued before a panel of this court on

December 5, 1961, and the dismissal by the court below of the longshoreman's complaint was unanimously affirmed on January 3, 1962 by opinion reported at 303 F.2d 752. Thereafter counsel for appellant timely filed an application for a rehearing *in banc*. On February 20, 1962 this application was denied by the *in banc* court, 303 F.2d 754, Judge Clark alone dissenting, 303 F.2d 754.

A further request was timely made by appellant for a reconsideration of the denial of his application for rehearing. Judge Clark also requested reconsideration and, on April 9, 1962, this request was granted, four judges, Chief Judge Lumbard and Judges Moore, Friendly and Kaufman dissenting. Leave was granted counsel to file additional briefs by April 19, 1962.

After full reconsideration the court affirms the dismissal below of the appellant's complaint. Six judges adopt the panel opinion of January 3, 1962 as the opinion of the *in banc* court, with one judge concurring in a separate opinion and two judges dissenting in separate opinions.

HAYS, Circuit Judge (concurring in the result).

I concur in the result. However, it seems to me that, on the issue of unseaworthiness, it is necessary to say more than the majority opinion says.

The difficulty with the concept of unseaworthiness arises from the fact that while the authorities hold that there is liability without fault, there is no case which holds that there is absolute liability. The situation demands, then, that without regard to fault, we fix a point short of absolute liability. But logical coordinates for fixing a point, such as the time during which a particular condition continues to exist, are entirely lacking. Time is obviously irrelevant since notice to the shipowner is of consequence only if his liability is limited by fault. See Mitchell v. Trawler Racer, Inc., 362 U.S. 539, 80 S.Ct. 926, 4 L.Ed. 941 (1960).

Perhaps the best that can be done is, like Judge Hand in Grillea v. United States, 232 F.2d 919 (2d Cir. 1956), to take as the starting point a condition of reasonable fitness for intended use, to consider this condition as impaired by the conduct or process which is the subject of litigation, and to call the resulting condition "unseaworthiness." The conduct or process by which the fitness is changed to unfitness is not then to be classified as itself constituting unseaworthiness.

A ship is not unseaworthy because it has glass in a window which might be broken. The injuries of a seaman who negligently breaks such a glass are not the result of unseaworthiness, nor are the injuries of a seaman who is cut by the falling glass. But injury incurred in stepping on the broken glass does result from unseaworthiness.

The rule is far from satisfactory, but it has the virtue of being possible, though not easy, of application, and of having behind it the authority of a great judge. The situation itself does not permit the formulation of a really satisfying rule.

In the present case the defect arose "as a momentary step or phase in the progress of work on board" and "should be considered as an incident in a continuous course of operation" and not an unfitness of the ship. Grillea v. United States, supra, at p. 922.

CLARK, Circuit Judge (dissenting).

I am disappointed that I cannot bring my brethren—as I had hoped—to consider in any detail the serious problems posed by this case. The majority opinion is directly contra to our holding in Palazzolo v. Pan-Atlantic S.S. Corp., 2 Cir., 211 F.2d 277, affirmed Ryan Stevedoring Co. v. Pan-Atlantic S.S. Corp., 350 U.S. 124, 76 S.Ct. 232, 100 L.Ed. 133, in which we held that negligence of the longshoremen could create a hazard which would constitute unseaworthiness. See also Grillea v. United States,

2 Cir., 232 F.2d 919. The sole difference here is that the hazard was short-lived; yet Mitchell v. Trawler Racer, Inc., 362 U.S. 539, 80 S.Ct. 926, 4 L.Ed.2d 941, teaches us that a hazard may be of short duration and recent vintage and nevertheless constitute unseaworthiness. And we have held that the trier of facts must determine in each case whether the duration of a hazard is such as to render the ship unseaworthy. Pinto v. States Marine Corp. of Delaware, 2 Cir., 296 F.2d 1, certiorari denied 82 S.Ct. 874. Yet no such consideration was made here. In the light of the present summary disposition of the case I am wondering why *in banc* consideration was ever granted.

So, too, the decision seems inconsistent with the rationale of the doctrine of unseaworthiness as laid down by the Supreme Court in, e. g., Seas Shipping Co. v. Sieracki, 328 U.S. 85, 66 S.Ct. 872, 90 L.Ed. 1099, and Mitchell v. Trawler Racer, Inc., supra, 362 U.S. 539, 80 S.Ct. 926, 4 L.Ed.2d 941. The Court has indicated that unseaworthiness is a form of enterprise liability, "a species of liability without fault, analogous to other well known instances in our law." Seas Shipping Co. v. Sieracki, supra, 328 U.S. 85, 94, 66 S.Ct. 872, 90 L.Ed. 1099. It is imposed because of the hazardous nature of the tasks, in order to encourage care by the shipowner and ultimately to cause the shipowner to bear those losses which are incidental to the enterprise. The shipowner is best situated to distribute the loss broadly amongst the beneficiaries of the industry. And, on the other hand, to make the burden fall on seamen or longshoremen is to require them to subsidize the shipping business. See Calabresi, Some Thoughts on Risk Distribution and the Law of Torts, 70 Yale L.J. 499 (1961). Because this is the rationale of the doctrine, it would seem that the shipowner should be liable for losses caused by all foreseeable hazards, avoidable or not, which are normally incident to the shipping trade. See 2 Harper & James, The Law of Torts 1376–1378 (1956); 3 Restatement, Torts § 519 (1938). See generally Ehrenzweig, Negligence Without Fault (1951). At the very least it should be liable for injuries caused by hazards within the scope of its responsibility which could be avoided by greater care or supervision. This is such a case; and the burden is not a harsh one, for even if liable the shipowner may well recover indemnification from the plaintiff's employer. E. g., Crumady v. The Joachim Hendrik Fisser, 358 U.S. 423, 79 S.Ct. 445, 3 L.Ed.2d 413.

For these reasons, and for those advanced in my original dissent, I believe this hazard rendered the ship unseaworthy. But as Judge KAUFMAN points out in his dissent, a question remains under the doctrine of the Pinto case as to the duration of the dangerous condition and whether the hazard was so short-lived that the ship would still remain reasonably fit for its intended use. I disagreed with the conclusion in the Pinto case; but, while it stands, it does make sense to return the case for findings on this time factor, as Judge KAUFMAN holds. So I join him in voting to reverse and remand for further proceedings.

KAUFMAN, Circuit Judge (dissenting).

I would remand for further findings on the duration of the dangerous condition; and a redetermination by the trial court, in light of Pinto v. States Marine Corp. of Delaware, 296 F.2d 1 (2d Cir. 1961), cert. denied, 82 S.Ct. 874 (1962), whether the high lining existed for sufficient time to render the ship unseaworthy.