Robert **MORALES** et al., Appellants,

v.

**CITY OF GALVESTON** et al., Appellees.

No. 18011.

United States Court of Appeals
Fifth Circuit.

May 17, 1961.

Milton Schwartz, Arthur J. Mandell, Houston, Tex., for appellants.

Preston Shirley, Galveston, Tex. (McLeod, Mills, Shirley & Alexander, Galveston, Tex.), for appellee City of Galveston.

Edward W. Watson, Galveston, Tex. (Eastham, Watson, Dale & Forney, Galveston, Tex.), for appellee Cardigan Shipping Co., Ltd.

Before HUTCHESON, RIVES and JONES, Circuit Judges.

JOSEPH C. HUTCHESON, Circuit Judge.

■ On certiorari the Supreme Court vacated our judgment and remanded the cause to this court "for consideration in light of Mitchell v. Trawler Racer, Inc., 362 U.S. 539, 80 S.Ct. 926, 4 L.Ed.2d 941", Morales et al. v. City of Galveston et al., 364 U.S. 295, 81 S.Ct. 107, 5 L.Ed. 2d 84. That decision removes any doubt that the shipowner's duty to provide a seaworthy vessel is "absolute", that is, a kind of liability without fault, and that the duty applies to an unseaworthy condition which may be only temporary. This duty, however, while absolute, is a duty only to furnish a vessel and appurtenances reasonably fit for their intended use. It is not a duty which makes the shipowner an insurer.

Thus, in the Mitchell case, 362 U.S. at page 550, 80 S.Ct. at page 933, the Supreme Court said:

> "What has been said is not to suggest that the owner is obligated to furnish an accident-free ship. The duty is absolute, but it is a duty only to furnish a vessel and appurtenances reasonably fit for their intended use. The standard is not perfection, but reasonable fitness; not a ship that will weather every conceivable storm or withstand every imaginary peril of the sea, but a vessel reasonably suitable for her intended service."

As we stated in our former opinion: "This is a case of a happening 'when the last batch of wheat came out of the funnels', instantaneously rendering unfit quarters which until then had been, and, when the funnels cleared away, continued to be, entirely seaworthy"[1] for her intended service, the receipt of uncontaminated grain.

██ This is not a case, as Mitchell's was, where it was conceded that the ship was unseaworthy but the seaworthiness was excused, in the Court of Appeals, because it was only temporary. This is a case where the district judge found as a fact that the vessel was seaworthy, that is reasonably fit for the service intended, and the cause of the injury was not any defect in the ship but the fact that the last shot of grain which was being loaded was contaminated as the result of dangerous chemicals, harmful to human beings, having been used in fumigating the wheat for the purpose of killing weevils. It is, in our opinion, a correct analysis of the situation to say that this is not, as the Mitchell case was, a case of a vessel being temporarily unseaworthy. Here the vessel was at all times staunch and fit for the service intended, the reception of grain which did not contain dangerous chemicals, and, since it was not intended or expected that grain so contaminated would be loaded into the bins, the ship was at all times seaworthy and fit for its service of receiving uncontaminated grain.

It is settled law that whether a vessel is, or is not, seaworthy, is ordinarily a question of fact for the trier of the facts to determine. Here the district judge, carefully canvassing the evidence and making specific findings as to the general and particular precautions taken against the receipt into the elevators of grain so contaminated, found that the presence of fumigants in the grain was not due to negligence or any other oversight on the part of the vessel or its owners and that, under the circumstances in the case, the ship was not unseaworthy but was reasonably fit for the service intended, receiving uncontaminated grain. This being so, unless the ship owner is to be held liable as an insurer, there is no legal basis for holding it liable in this case. The question of unseaworthiness being a question of fact, it cannot be said, under the facts of this case, that the district judge's finding, that unseaworthiness was not present here, may be set aside as clearly erroneous. Indeed, to hold liability in this case is to make the respondent an insurer, and this, as all the cases hold, cannot be done.

In writing our first opinion in this case, we did not rely upon the opinion of the Court of Appeals in the Mitchell case to support our view that the judgment in this case should be affirmed. On the contrary, in our opinion, in answer to the argument of appellant, that the fact that the Supreme Court had granted a writ in the Mitchell case showed that that case was not well decided in the Court of Appeals, we said:

"Whether appellants are correct in this view is not, we think, material to the decision of this case, or at all inconsistent with the views we have announced that, under the facts of this case which must be kept precisely in mind, the district judge's findings, that unseaworthiness was not present here, may not be set aside as clearly erroneous."

Nothing which was said in the opinion of the Supreme Court in the Mitchell case, in our opinion, is at all contrary to the views heretofore and herein expressed, and we here reaffirm them and the judgment of the district court.

Affirmed.

RIVES, Circuit Judge (dissenting).

I can see no real distinction between Mitchell v. Trawler Racer, Inc., 1960, 362 U.S. 539, 80 S.Ct. 926, 4 L.Ed.2d 941, and this case. In our original opinion in this case,[1] we had attempted to show its dif-

---

1. Morales et al. v. City of Galveston et al., 5 Cir., 275 F.2d 191, 195.

1. Morales et al. v. City of Galveston et al., 5 Cir., 1960, 275 F.2d 191, 195.

ference from the First Circuit's decision in the Mitchell case, 265 F.2d 426, as follows:

" * * * this is not a case of something transitory occurring to prevent the ship from being reasonably fit to permit a libellant to perform his task aboard the ship with reasonable safety and, persisting without being discovered, causing injury such as is dealt with in the Mitchell case, supra, and the other cases cited by appellants. This is a case of a happening 'when the last batch of wheat came out of the funnels', instantaneously rendering unfit quarters which until then had been, and, when the funnels cleared away, continued to be, entirely seaworthy."

Nonetheless, the Supreme Court vacated our judgment and remanded the case to us "for consideration in the light of Mitchell v. Trawler Racer, Inc., 362 U.S. 539, 80 S.Ct. 926, 4 L.Ed.2d 941." [2]

It is evident that the Supreme Court was not persuaded by our distinction of the Mitchell case; and it now seems to me that our distinction was not sound.

The Supreme Court's decision in the Mitchell case, supra, removes any doubt that the shipowner's duty to provide a seaworthy vessel is "absolute," that is, a kind of liability without fault, and that the duty applies to an unseaworthy condition which may be only temporary. "The duty is absolute, but it is a duty only to furnish a vessel and appurtenances reasonably fit for their intended use." 362 U.S. at page 550, 80 S.Ct. at page 933. In the present case the district court found:

"A last 'shot' of grain was called for, and was released into the bin. This quantity of grain completely covered the hatch opening (which was the only means of entrance and exit for the longshoremen, and was the only source of ventilation); hence, the longshoremen were working for the moment in an area completely enclosed and without access to outside air." [3]

It is clear that temporarily the bin where the libelants were working was not a reasonably safe place in which to work. I cannot understand how my brothers can think that the vessel and appurtenances were then "reasonably fit for their intended use." It seems to me that in the light of Mitchell v. Trawler Racer, Inc., supra, there was a temporary unseaworthy condition for which the owner, Cardigan Shipping Company, Ltd., is liable. My brothers say: "Here the vessel was at all times staunch and fit for the service intended, the reception of grain which did not contain dangerous chemicals, and, since it was not intended or expected that grain so contaminated would be loaded into the bins, the ship was at all times seaworthy and fit for its service of receiving uncontaminated grain." This statement, I submit, evidences a misconception of the question before us. Certainly the ship's rail in the Mitchell case was a "staunch" and a "fit" rail *until* it was covered with "slime and fish gurry." I would readily concede that the hold of the vessel in this case was a "fit" hold both before and sometime after the introduction of the fumigated grain. But the crucial point is whether the introduction of the fumigated grain rendered the ship temporarily unseaworthy, that is, long enough to injure the libelants.

The district court had made findings as to the damages sustained by each of the libelants. When made, such findings were academic since the district court also found an absence of liability. The appellants made a strong attack on the damages thus found as being grossly inadequate. If ultimately the district court's decision is reversed, as I anticipate, then I think that those findings will become vitally important and they should, in my opinion, be vacated in order that they may be fully re-examined by the district court.

---

2. Morales et al. v. City of Galveston, 1960, 364 U.S. 295, 81 S.Ct. 107, 5 L.Ed.2d 84.

3. Morales v. City of Galveston, D.C.S.D. Tex.1959, 181 F.Supp. 202, 205.