Arthur SMITH, Appellant,

v.

M/V GISNA, Her engines, tackle, apparel, and furniture, et al., Appellees.

No. 22525.

United States Court of Appeals
Fifth Circuit.

June 14, 1966.

Lionel L. Layden, Mobile, Ala., Harold J. Lamy, New Orleans, La., for appellant.

Alex T. Howard, Jr., W. Boyd Reeves, John H. Tappan, Mobile, Ala., McCorvey, Turner, Johnstone, Adams & May, Mobile, Ala., of counsel, for appellees.

Before RIVES and WISDOM, Circuit Judges, and MORGAN, District Judge.

RIVES, Circuit Judge:

Smith, a longshoreman, filed a libel in rem and in personam to recover damages for personal injuries. The vessel and owners impleaded Ryan Stevedoring Company for whom Smith was working at the time of his injury, and Ryan undertook the defense of the action.

The following facts, as found by the district court, were established without any dispute:

"2. The cargo being loaded was rolls of newsprint weighing from 600 to 800 pounds per roll. At times, two rolls were carried per load, but at the time of the accident there were four rolls on each load. The equipment used to load the rolls onto the vessel was a sling consisting of two pieces of steel with chains on either end on each side of the sling. The weight of the newsprint holds it in the sling. When the weight is slackened, the rolls of newsprint will come out. The sling used in this loading operation required two winchmen to properly operate it. A gang leader would give directions to the two winchmen as the load was lowered into the hatch. The winchmen must work closely together for the load to be properly lowered. If one winchman goes too fast or too slow, the load will hit the hatch coaming, and thusly fall when the weight of the rolls is removed from the sling.

"3. The accident in question occurred when the sling struck the 'tween deck coaming, releasing the rolls of newsprint, and causing one of them to hit the libelant, who was working in the lower level, passing dunnage to a fellow worker.

"4. The rolls of newsprint were completely wrapped with paper. Each end of the roll was closed with wooden plugs."

The district court entered the following as "Conclusions of Law":

"The best or the safest appliances are not required, but only those which are reasonably suitable and adequate for the purpose. Doucette v. Vincent, 1 Cir., 194 F.2d 834; Morales v. City of Galveston, 5 Cir., 275 F.2d 191; Billeci v. United States, 9 Cir., 298 F.2d 703.

"The M/V GISNA was seaworthy at the time of this accident, and the libelant was furnished with a safe place in which to work.

"The vessel's winches were in good operating order, and the officers and crew of the vessel were in no way negligent.

"The paper slings which were being used by Ryan Stevedoring Company, Inc., were safe and the procedure being used by Ryan was the usual and customary method of loading rolls of newsprint in the Port of Mobile.

"Unseaworthiness cannot be extended to the point of holding the owner liable in a case where he contracted for the loading of a customary cargo in a customary way, no failure of the ship's gear being shown and no showing that what was customary was not reasonable, but simply and solely on the basis that an accident occurred. Phipps v. N.V. Nederlandsche Amerikaansche, S.M., 9 Cir., 259 F.2d 143.

"The Court finds that the libelant should take nothing in this proceeding."

The only issue is whether Smith sustained his injuries as the result of not being furnished a safe place to work, or, more specifically, whether the particular rig being used by Ryan for loading the rolls of paper was seaworthy.[1]

Smith seeks to avoid the "clearly erroneous" hurdle of McAllister[2] by arguing that the basic facts are not in dispute and that the issue presents "a matter of judgment predicated on facts clearly established by all the testimony." It is true that Smith's serious injuries and the facts immediately attending the accident are all undisputed. A recent opinion by Judge Friendly for the Second Circuit[3] shows that this contention might well have merit but for the fact that there are serious factual disputes as to whether the rig was seaworthy.

Smith and six other longshoremen testified that rolls of paper frequently fell out of the type of sling being used, and gave their opinions that it was unsafe. They were cogently supported by the expert testimony of a safety consultant, who testified as to the rig: "It is dangerous because when the tension is taken off, if it rubs up against the side of the ship and the hatch coaming, it will relieve the tension, and the roll will pop out."

It was admitted that other than the weight of the rolls of paper and the conformation of the sling, no safety device was used to hold the rolls in the sling.

On the other side, Captain Murray, Ryan's president, and three other stevedoring superintendents testified that the sling in use was the safest method of loading this type of rolls of newsprint paper; that this method had been in use for four or five years or longer and was still in use; that using this method they loaded many ships;[4] and that none of them knew or had heard of a roll of paper falling out of such a sling except on this one occasion. One of the stevedoring superintendents conceded that a safety chain with a snap-on hook snapped over the roll would help hold it in the sling, but testified that he had never seen such a device in use.

No evidence was offered to show the occurrence of any similar accident from the use of this kind of rig. The absence of such evidence tends to weaken the

1. Title 29, § 9.82 of the Code of Federal Regulations provides:
   "Building Drafts.
   "(a) Drafts shall be so built or such means shall be taken as to prevent cargo from falling from the draft."
This regulation is in such general terms as to be of little assistance in passing on the issue of seaworthiness. Compare Provenza v. American Export Lines, Inc., 4 Cir. 1963, 324 F.2d 660.

2. McAllister v. United States, 1954, 348 U.S. 19, 75 S.Ct. 6, 99 L.Ed. 20.

3. Mamiye Bros. et al. v. Barber Steamship Lines, Inc., et al., 2 Cir., 360 F.2d 774, decided Apr. 13, 1966.

4. Captain Murray testified: "We have at least one a week, and probably have another thirty or forty, probably one hundred during the year."

weight of the longshoremen's testimony that rolls of paper frequently fell from such slings.

As a reviewing court, we can reverse only if on the entire evidence we are left with the definite and firm conviction that a mistake has been committed.[5] Giving due weight to the opportunity of the trial court to judge the credibility of the witnesses, we cannot set aside its findings of fact as clearly erroneous.

The judgment is therefore affirmed.