Samuel **MOSLEY**, Plaintiff-Appellee,

v.

**CIA. MAR. ADRA S.A.**, Defendant-
Appellant and Third-Party
Plaintiff-Appellee,

v.

**LIPSETT STEEL PRODUCTS, INC.**,
Third-Party Defendant-Appellant.

**No. 386, Docket 30372.**

United States Court of Appeals
Second Circuit.

Argued May 25, 1966.

Decided June 16, 1966.

Friendly, Circuit Judge, dissented.

George J. Engelman, New York City (Gay & Behrens, New York City, of counsel), for plaintiff, Mosley.

Victor S. Cichanowicz, New York City (William P. Larsen and Cichanowicz & Callan, New York City, of counsel), for defendant, Cia. Mar. Adra S.A.

Vincent A. Catoggio, New York City (Purdy, Lamb & Catoggio, New York City, on the brief), for third-party defendant, Lipsett Steel Products, Inc.

Before FRIENDLY, HAYS and FEINBERG, Circuit Judges.

HAYS, Circuit Judge:

Plaintiff Mosley, a longshoreman in the employ of a stevedore company, Lipsett Steel Products, Inc., the third-party defendant, was injured while loading scrap metal on the S.S. Turmoil, a vessel owned and operated by Cia. Mar. Adra S.A., the defendant. This is an appeal by the shipowner from a judgment of

$125,000 entered in the United States District Court for the Southern District of New York, in favor of Mosley for injury resulting from a breach of the shipowner's warranty of seaworthiness. The stevedore company appeals from a judgment notwithstanding the verdict in favor of the shipowner, on the issue of indemnity. We affirm on both appeals.

This case is before us for a second time, having been reversed and remanded for a new trial on a previous appeal because it was impossible to ascertain whether the general verdict for plaintiff was based on a permissible ground, a finding that there was insufficient lighting, or on an impermissible ground, the use of a hook which was not shown to be an appurtenance of the ship or unfit for its intended use. See Mosley v. Cia. Mar. Adra, S.A., 314 F.2d 223 (2d Cir.), cert. denied, 375 U.S. 829, 84 S.Ct. 73, 11 L.Ed.2d 61 (1963).

I.

There is evidence in the record to support the conclusion that the injury to Mosley occurred in the following way.

On October 8, 1956 the S.S. Turmoil began loading a cargo of scrap metal at the Port of Newark. Mosley was part of a gang assigned to load scrap into the 'tween deck of the #5 hatch. Mosley's job was to direct the placing of metal scrap which a crane dumped down a chute. When one part of the 'tween deck became filled, he would direct the chute toward another area in order to assure an even distribution of the cargo. The chute, forty feet long and three to five feet wide at top, tapering to the bottom, was suspended in the hatch from the cargo runners of the ship by means of bridles and shackles.

At the close of the workday on October 14, the day before the accident, a load of scrap metal had been placed in the square of the hatch of the 'tween deck to a height of three-and-a-half or four feet, partially blocking the entry of natural light.

The next morning, after Mosley had been at work about an hour and a half,

"a piece of transmission or the rear end of a car" became lodged in the tapered end of the chute, about three feet from the mouth and blocked the flow of scrap.

Mosley, who was working alone on the 'tween deck, told the foreman to suspend the loading. He approached to within four or five feet of the chute, intending to use an "improvised hook" five or six feet in length, to dislodge the metal. He positioned himself "as best as I possibly could" on a deck littered with irregular pieces of scrap. While he was attempting to remove the obstruction, the scrap under Mosley's feet gave way; he fell and was injured.

The trial judge charged the jury:

"Specifically here the question which you have to decide is whether under all the circumstances the tween deck area was reasonably fit to permit the plaintiff to perform his work with reasonable safety. And here you have to take into consideration all of the conditions then obtaining, the type of operation that was going on, the lighting conditions, the chute, the kind of chute it was, the condition of the deck.

\* \* \* \* \* \*

But consider all the conditions and decide whether under all of those conditions that area was reasonably fit for the plaintiff to perform his work in the task assigned to him with reasonable safety."

The defendant shipowner argues that this charge permitted the jury to consider "grounds which were not established by the evidence." But the evidence on each point mentioned in the charge need not be weighed separately. Mosley's contention, and the theory on which the case was submitted to the jury, was that the various factors mentioned each contributed to the unseaworthiness of the 'tween deck area, i. e., rendered it unsuitable for the use to which it was put.

In Krey v. United States, 123 F.2d 1008, 1010 (2d Cir. 1941) this court, referring to a number of separate factors which, it was charged, resulted in the unseaworthiness of an area of the ship, held that:

"*these factors combined* seem to us clearly to establish an unseaworthy condition." (Emphasis added.)

■ Here, the chute was specifically put in place to receive the cargo of metal scrap. It was an appurtenance of the ship. Plaintiff presented evidence that because of the tapered nature of the chute, and the diverse sizes and shapes of the metal scrap, obstructions were bound to occur. "The vessel's duty to furnish seamen with tools reasonably fit for their intended use is absolute." Michalic v. Cleveland Tankers, Inc., 364 U.S. 325, 327, 81 S.Ct. 6, 9, 5 L.Ed.2d 20 (1960).

■ The 'tween deck was littered with irregular pieces of metal scrap. The chief officer of the S.S. Turmoil testified that he refused to enter the 'tween deck area during loading because it was "dangerous"; scrap would "fall off" the chute; it "bounces" and "ricochets around." This situation when combined with lack of adequate lighting resulted in unseaworthiness. See Ross v. S.S. Zeeland, 240 F.2d 820, 822–823 (4th Cir. 1957). There was more than enough evidence to support a finding that there was insufficient lighting in the 'tween deck area. See Mosley v. Cia. Mar. Adra, S.A., 314 F.2d 223, 227–228 (2d Cir.), cert. denied, 375 U.S. 829, 84 S.Ct. 73 (1963).

■ Defendant contends that portable lighting equipment was available to the longshoremen on request. There is testimony that such equipment was in the storehouse of the ship, but there is no showing that it was available for this area on the date in question. Nor was evidence produced concerning the adequacy and condition of electrical outlets. Indeed, Foreman Brown, who was in charge of loading, testified that his general request for lighting equipment was not acted upon.

■ In Mahnich v. Southern S.S. Co., 321 U.S. 96, 103–104, 64 S.Ct. 455,

459, 88 L.Ed. 561 (1944) the Supreme Court said:

> "Nor does the fact that there was sound rope on board, which might have been used to rig a safe staging, afford an excuse to the owner for the failure to provide a safe one. * * * the owner must provide .the seaman with seaworthy appliances with which to do his work, * * * *safe appliances [must] be furnished when and where the work is to be done.*" (Emphasis added.)

Unseaworthiness is not "excused because proper equipment was available but went unused." Skibinski v. Waterman S.S. Corp., 360 F.2d 539 (2d Cir. 1966).

"[T]he owner warrants to longshoremen * * * a safe place in which to handle cargo." Carabellese. v. Naviera Aznar, S.A., 285 F.2d 355, 359–360 (2d Cir. 1960), cert. denied, 365 U.S. 872, 81 S.Ct. 907, 5 L.Ed.2d 862 (1951). There was ample evidence to support the jury's finding that the place where Mosley was assigned to work was unsafe.

Defendant also argues that the district court "submitted the case to the jury on issues other than those defined and limited by the pre-trial order. The pre-trial order simply indicated that "all the issues of fact and law to be raised at the second trial of this action have previously been raised at the first."

■ Mosley's proof involved substantially the same factors on both trials. To the extent that there was any variation, the district court properly modified the pre-trial order pursuant to Rule 14, of the Calendar Rules of the United States District Court for the Southern District of New York.

There is nothing in the charge of the district court concerning the hook used by Mosley that conflicts wih this court's opinion in Mosley v. Cia. Mar. Adra, S.A., supra.

## II.

The jury returned a verdict in favor of the stevedore company, in the third-party action brought by the shipowner for indemnity. The district court set aside the verdict and granted judgment n. o. v. to the shipowner.

The stevedore company claims that Cia. Mar. Adra did not move for a directed verdict on the third-party complaint and therefore could not properly make an n. o. v. motion. See 5 Moore, Federal Practice ¶ 50.08 (2d ed. 1964).

■ At the conclusion of all the evidence, Lipsett Steel sought dismissal of the third party complaint:

> "on the ground that there is no proof that the third-party defendant failed to perform its contract properly * * * *"

Cia. Mar. Adra's counsel stated:

> "Your Honor, the defendant renews its motion to dismiss the complaint and for a directed verdict on the ground that the evidence *is insufficient on which to go to the jury on any of these issues that have been raised in this case.*" (Emphasis added.)

This motion, although somewhat ambiguous, preserved Cia. Mar. Adra's right to make an n. o. v. motion.

■ The requirement of Rule 50(b) of the Federal Rules of Civil Procedure,[1] that a directed verdict motion must precede an n. o. v. motion is harsh in any circumstances. Especially where, as here, three parties are involved, where

---

1. Rule 50(b) of the Federal Rules of Civil Procedure reads in relevant part:

   "(b) MOTION FOR JUDGMENT NOTWITHSTANDING THE VERDICT. Whenever a motion for a directed verdict made at the close of all the evidence is denied or for any reason is not granted, the court is deemed to have submitted the action to the jury subject to a later determination of the legal questions raised by the motion. Not later than 10 days after entry of judgment, a party who has moved for a directed verdict may move to have the verdict and any judgment entered thereon set aside and to have judgment entered in accordance with his motion for a directed verdict; or if a verdict was not returned such party, within 10 days after the jury has been discharged, may move for judgment in accordance with his motion for a directed verdict."

the attention of the defendant's counsel is focused on the plaintiff, his primary adversary, and where there are the complications which must attend a trial of this type, a motion such as that made by counsel should not be read narrowly, so as to penalize the client but rather should be read in light of the purpose of the Federal Rules to "secure the just, speedy and inexpensive determination of every action."

Cia. Mar. Adra in a memorandum in support of its n. o. v. motion expressly pointed out to the district court that a motion for a directed verdict had been made. Lipsett Steel in its memorandum of opposition did not dispute this claim. The fact that Lipsett Steel did not take exception to the n. o. v. motion suggests that Cia. Mar. Adra's directed verdict motion was accepted as covering the indemnity issue.

■ On the merits of the n. o. v. motion, the trial judge ruled that "any seaworthy condition obtaining in the 'tween deck area was created by the stevedore * * *." A stevedore company is liable for indemnity if it creates an unseaworthy condition, or if it fails to eliminate a known risk created by another. See Mortensen v. A/S Glittre, 348 F.2d 383, 385 (2d Cir. 1965). Since Lipsett furnished and rigged the chute, and controlled all other relevant aspects of the loading, the jury would have to find that the stevedore company was liable for a breach of its warranty of workmanlike service. See, e. g., Italia Societa per Azioni di Navigazione v. Oregon Stevedoring Co., 376 U.S. 315, 318–324, 84 S.Ct. 748, 11 L.Ed.2d 732 (1964); Crumady v. Joachim Hendrik Fisser, 358 U.S. 423, 428–429, 79 S.Ct. 445, 3 L.Ed. 2d 413 (1950); Ryan Stevedoring Co. v. Pan-Atlantic S.S. Corp., 350 U.S. 124, 133–134, 76 S.Ct. 232, 100 L.Ed. 133 (1956).

Affirmed.

FRIENDLY, Circuit Judge (dissenting):

Deeply regretting the necessity, I see no alternative to sending this case back for a third trial in which, hopefully, the jury may be given a proper charge. Despite views last expressed in Skibinski v. Waterman S.S. Corp., 360 F.2d 539, 543 (1966) (dissenting opinion), I agree that Mosley was entitled to go to the jury on the issue of inadequate lighting; although the cases generally cited to this point concerned failure to supply lighting at night, Mollica v. Compania Sud-Americana de Vapores, 202 F.2d 25, 27 (2 Cir.), cert. denied, 345 U.S. 965, 73 S.Ct. 952, 97 L.Ed. 1384 (1953); Ross v. S.S. Zeeland, 240 F.2d 820, 822–823 (4 Cir. 1957), the jury could properly have found that the stevedores had created on October 14 a condition of permanent night in the 'tween deck of the #5 hatch. Cf. Robillard v. A. L. Burbank & Co., 186 F.Supp. 193 (S.D.N.Y.1960). Whether the form of the chute afforded any 'basis for a finding of unseaworthiness is decidedly questionable; we have been pointed to no evidence that its configuration departed from the norm, and the tapering must have served a useful purpose in decelerating the falling scrap. However, the jury was permitted to find unseaworthiness not only on these accounts but on the basis of "the type of operation that was going on" and "the condition of the deck"—activities and results being currently created by Mosley's employer, Lipsett, in the work it was hired to perform. Metal scrap can hardly be loaded so as to leave a 'tween deck entirely spick and span; if Lipsett exceeded permissible limits of messiness, this went to its negligence but not to the seaworthiness of the ship. Cf. Morales v. City of Galveston, 370 U.S. 165, 82 S.Ct. 1226, 8 L.Ed.2d 412 (1962). In granting the ship's motion for judgment n. o. v. against Lipsett, the judge recognized that the absence of lighting might be "the only unseaworthiness," yet his instruction permitted the jury to find against the ship not only on that permissible ground but on impermissible ones. The same rule of law applied in our prior decision requires a new trial.