Martin **RADOVICH**, Libelant-Appellant,

v.

**CUNARD STEAMSHIP CO., Ltd.,** Respondent-Impleading Petitioner-Appellee,

v.

**JOHN T. CLARK & SON** and **Gourock Ropework Co., Ltd.,** Respondents-Impleaded.

No. 342, Docket 29867.

United States Court of Appeals Second Circuit.

Argued April 25, 1966.

Decided July 18, 1966.

Kaufman, Circuit Judge, dissented.

Chester A. Hahn, New York City (Sylvia Miller, New York City, on the brief), for libelant-appellant.

William J. Brennan, New York City (Lord, Day & Lord, New York City, on the brief), for respondent-impleading petitioner-appellee.

Joseph Arthur Cohen, New York City (Alexander, Ash & Schwartz, New York City; Sidney A. Schwartz, New York City, on the brief), for respondent-impleaded-appellee John T. Clark & Son.

Before SMITH, KAUFMAN and FEINBERG, Circuit Judges.

FEINBERG, Circuit Judge:

This is an appeal by libelant Martin Radovich from a decree of the district court dismissing his libel for personal injuries against the shipowner, Cunard Steamship Co., Ltd. For the reasons indicated below, we reverse.

Radovich, a longshoreman, was working aboard Cunard's *R.M.S. Mauretania* on the morning of July 2, 1961, helping to unload cargo. Radovich was on deck as an "extra man," participating in the discharge of automobiles through a hatch. An "extra man" holds a guide line attached to the car to keep it from striking anything on deck as it is carried through the air. Cunard supplied a standard 3¾ inch, three-strand rope for the "Burton" fall, which controls horizontal motion of the cargo. The longshoremen fixed the rope in a single purchase, in which a single length is connected to the wire fall, which controls vertical movement. In a double purchase, two pulleys and two lengths of

rope are used, decreasing the speed of the operation but increasing the strength of the rigging. The unloading began with the removal of several small foreign cars; after an hour and a half, the longshoremen attempted to unload a much heavier (3,600 pound) sedan. The car was lifted through the hatch and moved across the deck toward the pier. At a point above the railing, the Burton fall rope parted and the car fell; its sustaining bridle struck and injured Radovich, who was knocked to the deck. The rope supplied by Cunard was new, unused, and without latent defect. Claims of negligence and unseaworthiness were held unfounded by the trial court, and the libel was dismissed. Cunard had impleaded libelant's employer, John T. Clark & Son, and was awarded litigation expenses as against this stevedoring company because of the longshoremen's negligence in using a single purchase.[1]

Radovich argues first that his proof that the rope snapped suddenly in the midst of the ordinary performance of the operation raised a presumption under the doctrine of *res ipsa loquitur* that the rope was insufficient for its intended purpose, and Cunard did not adduce sufficient evidence to explain away or rebut this presumption. This statement of the *res ipsa* doctrine is faulty in a number of respects, but it is unnecessary to dwell on this point. It suffices to say that the trial judge found that the rope was new, unused, and without latent defect and broke solely because too great a strain was placed upon it and that these findings are clearly supported by the evidence.

Radovich's other claim is more substantial. The trial judge found that the sedan was too heavy for the single purchase, that the sole reason the rope parted was that the longshoremen tried to lift the car without re-rigging the gear, and that a double purchase would have been effective. Accepting this finding *arguendo*, Radovich concludes that this proves unseaworthiness. The trial court reasoned that the use of the single purchase was the cause of the accident and, being an act, the cause was not a condition (unseaworthiness), but rather was operational negligence by the longshoremen. The cases in this circuit do make a distinction between operational negligence and an unseaworthy condition negligently created,[2] denying the ship's liability in the former case. The distinction was recently re-affirmed in Norfleet v. Isthmian Lines, Inc., 355 F.2d 359 (2d Cir. 1966), and Skibinski v. Waterman S.S. Corp., 360 F.2d 539 (2d Cir. 1966).

The difference between operational negligence and unseaworthiness has been questioned in this circuit[3] and is not accepted in some other jurisdictions.[4] The difficulty lies in defining when negligent conduct ends and an unseaworthy condition begins. The court below characterized the distinction as "metaphysical" and a quick glance at some of our cases engenders sympathy for a trial judge attempting to reconcile them. Thus, in Grillea v. United States, 232 F.2d 919 (2d Cir. 1956), a leading case on this point, the wrong hatch cover was placed over a pad-eye "only a short time" before libelant, a longshoreman, stepped on it

---

1. Cunard had also attempted to implead Gourock Ropework Co., Ltd., the alleged supplier of the rope used by the longshoremen. However, the claim against Gourock was abandoned because Cunard was unable to serve process upon it.

2. See Note, The Doctrine of Unseaworthiness in the Lower Federal Courts, 76 Harv.L.Rev. 819, 827–28 (1963).

3. See Reid v. Quebec Paper Sales & Transp. Co., 340 F.2d 34, 37 (2d Cir. 1965). ("One does not have to be unduly cynical to look askance at this distinction, for every act of negligence, no matter how short-lived, creates an unsafe condition for those exposed to it.")

4. Ferrante v. Swedish Am. Lines, 331 F.2d 571 (3d Cir.), cert. dismissed, 379 U.S. 801, 85 S.Ct. 10, 13 L.Ed.2d 20 (1964); Scott v. Isbrandtsen Co., 327 F.2d 113 (4th Cir. 1964). Contra, Billeci v. United States, 298 F.2d 703 (9th Cir. 1962). See also Mitchell v. Trawler Racer, Inc., 362 U.S. 539, 548 n. 11, 80 S.Ct. 926, 4 L.Ed.2d 941 (1960).

and it gave way beneath him. This was held (2–1) to constitute a condition of unseaworthiness. On the other hand, in Puddu v. Royal Netherlands S.S. Co., 303 F.2d 752, 756 (2d Cir.) (*per curiam en banc*), cert. denied, 371 U.S. 840, 83 S.Ct. 67, 9 L.Ed.2d 75 (1962), also frequently cited on this issue, a boom buckled while a rain tent was being raised and the falls of a winch were being stretched to a dangerously large angle. This court affirmed (7–2) a finding that no condition of unseaworthiness had been created. In Strika v. Netherlands Ministry of Traffic, 185 F.2d 555 (2d Cir. 1950), cert. denied, 341 U.S. 904, 71 S.Ct. 614, 95 L.Ed. 1343 (1951), the manner of hooking up two bridles to lift a heavy piece of metal was unsafe and rendered the ship's gear unseaworthy. In Skibinski v. Waterman S.S. Corp., supra, plaintiff was injured because an open-mouth cargo hook without any locking device was used to lower a ladder which fell upon plaintiff; this court affirmed (2–1) a finding that the ship was unseaworthy. In Massa v. C. A. Venezuelan Navigacion, 332 F.2d 779 (2d Cir.), cert. denied, 379 U.S. 914, 85 S.Ct. 262, 13 L.Ed.2d 186 (1964), this court affirmed a finding that pallets hooked to a loading mechanism were reasonably fit, even though tongs had been placed in the wrong holes. In Spinelli v. Isthmian S.S. Co., 326 F.2d 870 (2d Cir.) (*per curiam*), cert. denied, 377 U.S. 935, 84 S.Ct. 1338, 12 L.Ed.2d 298 (1964), the trial judge found that a winch was not defective and that the accident happened because a stevedore changed from loads of six pipes on a winch to loads of nine pipes, thus creating too much of a strain on the winch; this court affirmed a finding that there was no unseaworthiness. In Reid v. Quebec Paper Sales & Transp. Co., 340 F.2d 34 (2d Cir. 1965), this court affirmed (2–1) a finding that a ladder, which a fellow-worker failed to secure, rendered the ship unseaworthy.

■ If anything emerges from these cases other than the difficulty of applying the act-condition (or operational negligence-unseaworthiness) dichotomy, it is that the findings of the trier of fact should be left undisturbed, if the law to be applied to the facts is properly understood. Thus, *Puddu, Spinelli, Massa, Reid, Skibinski,* and *Strika* were all affirmances of the trier of fact (the jury in the last case; the judge in the others).[5] We believe that when the jury is properly instructed as to the law, the findings on the issue of whether operational negligence had given way to a condition of unseaworthiness should ordinarily be left undisturbed, even though a different jury might reach a contrary result. Since this assumes a correct impression of the governing law by the trier of fact, when the instructions are improper, the verdict cannot stand. Norfleet v. Isthmian Lines, Inc., supra. Similarly, while there may be less leeway for inconsistent results when the trier of fact is a judge, see Mamiye Bros. v. Barber S.S. Lines, Inc., 360 F.2d 774 (2d Cir. 1966), here too the finding should ordinarily stand unless the court manifests an incorrect conception of the applicable law.

■ Applying these standards to this case, it is clear that Judge Cashin felt himself bound by two cases he considered indistinguishable from his own: Puddu v. Royal Netherlands S.S. Co., supra, and Spinelli v. Isthmian S.S. Co., supra. Thus, he stated:

> In substance, this case is indistinguishable from the *Puddu* and *Spinelli* cases, supra. Too much stress was placed on serviceable equipment and that directly resulted in the injury to the libellant. In this Circuit such an act is operational negligence— it does not create an unseaworthy condition.

However, those cases did not preclude a finding of unseaworthiness by the court

---

5. In *Grillea*, the trier of fact apparently did not reach the issue.

below. In *Puddu* and *Spinelli*, as indicated above, the issue was whether the (judge-made) findings of the trial court were clearly erroneous. By the same token, these cases did not hold that a contrary finding would have been clearly erroneous. If anything, *Strika* and *Skibinski*, supra, would seem closer to this case than *Puddu* and *Spinelli*. In both, unseaworthiness was based upon the type of loading mechanism used by longshoremen (in *Strika*, two bridles, instead of one, to lift a heavy piece of metal, and in *Skibinski*, an open-mouth ("S" shaped) cargo hook to lower a ladder). Both cases are strikingly similar to the instant case where use of a single strand of rope in a lifting operation, rather than a double strand, created a dangerous condition. Cf. Crumady v. Joachim Hendrik Fisser, 358 U.S. 423, 79 S.Ct. 445, 3 L.Ed.2d 413 (1959) (winch safety catch adjusted beyond the tolerance of the load). Therefore, since the court incorrectly regarded itself as bound to apply the operational negligence doctrine, we reverse. Upon retrial, the court can focus on the key issues of precisely what the act of "operational" negligence was, and whether that negligent act had come to a stop before the injury occurred. For example, there is a difference between an unsafe plan of operation, which creates a dangerous condition from the beginning of its execution, and a faulty execution of a proper plan. In determining the "act" of negligence, the trial court would have to decide whether use of the single-purchase to lift the 3,600 pound sedan was such a negligent plan which created the dangerous condition immediately upon its inception.

While we feel that the single-purchase was inappropriate and unreasonable for the use it was applied to, and that at the time the lifting of the heavier sedan began a condition of unseaworthiness already existed, we would not necessarily reverse a contrary determination on these key issues by a trial court not mistaken as to its power under the applicable law. Our dissenting brother does not want to "inflict on the district court the impossible task of dealing with words and phrases that are like beads of quicksilver." If by this he means the distinction between operational negligence and an unseaworthy condition, we agree, as indicated above, that it is difficult to draw the line between them. A position that it is impossible to do so with fairness and reason in fact poses the question of whether the distinction should not be dispensed with altogether. However, we leave that issue for another day; we simply hold today that the facts in the instant case allow a finding of actionable unseaworthiness, and that any impression gleaned from our prior decisions that such a finding is impermissible is erroneous.

Reversed and remanded for proceedings consistent with this opinion.

KAUFMAN, Circuit Judge (dissenting):

Since my brothers agree that it is difficult to see any real distinctions between cases where the stevedore lost and those where he won, compare, e. g., Massa v. C. A. Venezuelan Navigacion, 332 F.2d 779 (2d Cir.), cert. denied, 379 U.S. 914, 85 S.Ct. 262 (1964) with Strika v. Netherlands Ministry of Traffic, 185 F.2d 555 (2d Cir. 1950), cert. denied, 341 U.S. 904, 71 S.Ct. 614 (1951), I cannot, in good conscience, become a party to simply an exercise in skillful rhetoric— and inflict on the district court the impossible task of dealing with words and phrases that are like beads of quicksilver. Moreover, toiling to impose liability on a shipowner really free from blame because that is the only route to recover a substantial sum from the stevedoring company in light of the limitations in the Longshoremen's and Harbor Workers' Compensation Act, 33 U.S.C. § 901 et seq., is to put our imprimatur on trivial, meaningless and confusing distinctions. Injustices should be remedied by additional legislation; our attempts to do so have served only to obfuscate this area of the law. See Judge Friendly's dissent

in Skibinski v. Waterman Steamship Corporation, 360 F.2d 539 (2d Cir. 1966).

The majority opinion, with commendable candor, recognizes that attempting to read a purposeful design into the distinctions between "operational" negligence and unseaworthiness "engenders sympathy for a trial judge attempting to reconcile them." Moreover, the majority, with seemingly great reluctance, reverses Judge Cashin, stating: "If anything emerges from these cases * * *, it is that the findings of the trier of fact should be left undisturbed, if the law to be applied to the facts is properly understood." But, rhyme or reason evades us even when we exert all our energies to reconcile the cases defining "operational" negligence *vis-à-vis* unseaworthiness. Here, we had a flawless rope which all morning long had safely discharged vehicles weighing up to 2,800 pounds. It was then employed, during the same, sustained process of removing cargo and without any significant time lapse, to lift a 3,600 pound car. Is it not harsh to insist that the ship became unseaworthy because the stevedores did not recognize the 800-pound difference and immediately failed to employ a double instead of a single purchase rope? I see nothing but a continuous action discharging vehicles which lasted all morning—which unfortunately injured Radovich—and I am not able to discern any fine nuances or differences between the facts here and Judge Hays' pointed illustration of one being hit by falling glass. Puddu v. Royal Netherlands S.S. Co., 303 F.2d 752, 757 (2d Cir. 1962) (concurring opinion).

In light of the majority's opinion, I have great difficulty imagining any act of "operational" negligence which cannot by clever advocacy and hair-line distinctions render the shipowner liable for unseaworthiness. And, since the Supreme Court has not spoken finally on this issue, I view the reversal in this case as an unfortunate vehicle for continuing the futile effort to define catchwords which elude grasp.