Carmelo **CANDIANO**, Plaintiff-Appellee,

v.

**MOORE–McCORMACK LINES, INC.,**
Defendant-Appellant,

v.

**JOHN W. McGRATH CORPORATION,**
Third-Party Defendant-Appellee.

No. 243, Docket 30696.

United States Court of Appeals
Second Circuit.

Submitted Aug. 15, 1967.

Decided Dec. 4, 1967.

Martin J. McHugh, New York City, for petitioner-defendant-appellant, Moore-McCormack Lines, Inc.

Before WATERMAN, MOORE and KAUFMAN, Circuit Judges.

PETITION FOR REHEARING

PER CURIAM:

Petition for rehearing denied. Judge MOORE concurs in the denial of the petition for the reasons set forth in his memorandum.

MOORE, Circuit Judge (concurring):

The defendant-appellant Moore-McCormack Lines, Inc., seeks by petition a rehearing and reconsideration of the opinion and decision of this court (August 1, 1967) in Candiano v. Moore-McCormack Lines, Inc., 382 F.2d 961, which resulted in an affirmance of a judgment entered on March 16, 1966, in favor of the plaintiff against appellant, for personal injuries sustained aboard a ship owned by appellant. The appeal was argued on December 13, 1966. The principal ground for rehearing is the claim that this court misinterpreted the Supreme Court's decision in Mascuilli v. United States, 387 U.S. 237, 87 S.Ct. 1705, 18 L.Ed.2d 743 (May 22, 1967) in relying upon that decision as a basis for affirmance herein. In my opinion, petitioner claims quite properly that Mascuilli being undecided at the time of the filing of its brief and of the oral argument, it had no opportunity to present its views as to the effect, if any, of Mascuilli upon this case.

On the same day (August 1, 1967) as this Court decided the Candiano case, it handed down its decision in Alexander v. Bethlehem Steel Corporation, 382 F.2d 963. The issues presented are substantially similar. In the petition for a rehearing en banc in Alexander, counsel claim that "this Court has been misled by the incorrect presentation of the supposed issue before the Supreme Court in Mascuilli as printed in 35 L.W. 3052." Reference is made to the three specific questions contained in the petition for certiorari in Mascuilli and the argument is made that the Supreme Court's granting of the writ and reversing the judgment does not justify an assumption that that Court has rejected "the doctrine of 'operational negligence' * * * as a factor in the determination of liability."

Before considering whether a rehearing would or should alter the decision, a brief review of the factual situations upon which liability is asserted must be made.

In *Alexander* the concatenation of events was the lowering of the steel by the crane operator and the striking by the steel of the protruding dunnage. If the dunnage had not been protruding, the possibly too-rapid lowering would not have been of consequence. If a superabundance of caution had been exercised in the lowering operation, probably the dunnage would not have been propelled through the air so as to strike the plaintiff. The jury's findings of no negligence by the shipowner and of unseaworthiness establish the basis of that judgment.

In *Candiano* the beam fell because the hooks securing it to the lowering mechanism had been improperly attached by fellow employees.

At the time of the arguments of *Alexander* and *Candiano*, there was a plethora of cases involving negligence and unseaworthiness and a paucity of consistency. No legal principle which might serve as

a guide for the future could be gleaned from these decisions. In this circuit, the panels were hopelessly divided,[1] other circuits achieved no greater consistency.[2] Analyses of these conflicts have been made in various decisions with care and discernment. Judges railed against the necessity of stultifying their judicial minds by being required "to make distasteful hair-splitting distinctions unrelated to any intelligible concepts of right and wrong" (Friendly, C.J. in dissent in Skibinski v. Waterman S.S. Corp., 360 F.2d 539 (2 Cir. 1964), cert. denied 387 U.S. 921, 87 S.Ct. 2027, 18 L.Ed.2d 975 (1967)) and to make "trivial, meaningless and confusing distinctions" (Kaufman, C.J. in dissent in Radovich v. Cunard S.S. Co., 364 F.2d 149 (2 Cir. 1966)).

This Court in 1962 attempted to cope with the problem by sitting *en banc* in Puddu v. Royal Netherlands S.S. Co., 303 F.2d 752. In *Puddu* by a six to two vote, the Court sought to perpetuate Judge Learned Hand's previous (1956) approach in Grillea v. United States, 232

F.2d 919 by the "incident in a continuous course of operation" theory (p. 922). Subsequent cases (and quite to be expected) had to struggle with: what is "continuous"? and what is the "operation"? In *Puddu* the Court said both that "Time is obviously irrelevant" (303 F.2d p. 757) and that it should consider whether the "incident" was in a continuous course of operation and a "momentary step or phase in the progress of work on board" (*Grillea*, 232 F.2d p. 922). The Supreme Court denied certiorari, 371 U.S. 840, 83 S.Ct. 67, 9 L.Ed.2d 75 (1962). In the ensuing years, 1962–1967, the cases continued to be decided virtually without rhyme or reason. Judge Feinberg (the trial judge in *Candiano,* and now on this Court) has suggested with good reason considering "whether the distinction [between operational negligence and unseaworthiness] should not be dispensed with altogether." Radovich v. Cunard Steamship Co., 364 F.2d 149, 153 (2d Cir., 1966). Judge Hastie in his dissent in Thompson v. Calmar, 331 F.2d 657 (3d

1. Compare Norfleet v. Isthmian Lines, Inc., 355 F.2d 359 (2d Cir. 1964); Guarracino v. Luckenbach Steamship Co., 333 F.2d 646 (2d Cir. 1964); Massa v. C. A. Venezuelan Navigacion, 332 F.2d 779 (2d Cir. 1964); Spinelli v. Isthmian, 326 F.2d 870 (2d Cir. 1964), cert. denied, 377 U.S. 935, 84 S.Ct. 1338, 12 L.Ed.2d 298 (1964); Mosley v. Cia Mar. Adra S.A., 314 F.2d 223 (2d Cir. 1963), cert. denied, 375 U.S. 829, 84 S.Ct. 73, 11 L.Ed.2d 61 (1963); Puddu v. Royal Netherlands SS Co., 303 F.2d 752 (2d Cir. en banc 1962); cert. denied, 371 U.S. 840, 83 S.Ct. 67, 9 L.Ed.2d 75 (1962); Grillea v. United States, 232 F.2d 919 (2d Cir. 1956); Poignant v. United States, 225 F.2d 595 (2d Cir. 1955); Manhat v. United States, 220 F.2d 143 (2d Cir.), cert. denied, 349 U.S. 966, 75 S.Ct. 900, 99 L.Ed. 1288 (1955), with Radovich v. Cunard SS Co., 364 F.2d 149 (2d Cir. 1966); Mosley v. Cia Mar. Adra S.A., 362 F.2d 118 (2d Cir. 1966); Skibinski v. Waterman Steamship Corp., 360 F.2d 539 (2d Cir. 1966), cert. denied, 387 U.S. 921, 87 S. Ct. 2027, 18 L.Ed.2d 975 (1967); Reid v. Quebec Paper Sales & Transportation Co., 340 F.2d 34 (2d Cir. 1965); Strika v. Netherlands Ministry of Traffic, 185 F.2d 555 (2d Cir. 1950).

2. Fifth Circuit:
   Dugas v. Nippon Yusen Kaisha, 378 F.2d 271 (5th Cir. 1967); Marshall v. Ove Skou Rederi A/S, 378 F.2d 193 (5th Cir. 1967); Robichaux v. Kerr McGee Oil Industries, Inc., 376 F.2d 447 (5th Cir. 1967); Antoine v. Lake Charles Stevedores, 376 F.2d 443 (5th Cir. 1967); Smith v. M/V Gisna, 362 F.2d 164 (5th Cir. 1966); McQuiston v. Freighters and Tankers Steamship Co., 327 F.2d 746 (5th Cir. 1964); Neal v. Lykes Bros. Steamship Co., 306 F.2d 313 (5th Cir. 1962); cf. Morales v. City of Galveston, 275 F.2d 191 (5th Cir.); vacated and remanded, 364 U.S. 295, 81 S.Ct. 107, 5 L.Ed.2d 84 (1960); 291 F.2d 97 (5th Cir. 1961); aff'd, 370 U.S. 165, 82 S.Ct. 1226, 8 L.Ed.2d 412 (1962).
   Ninth Circuit:
   Huff v. Matson Navigation Co., 338 F.2d 205 (9th Cir. 1964); Blassingill v. Waterman Steamship Corp., 336 F.2d 367 (9th Cir. 1964); Beeler v. Alaska Aggregate Corp., 336 F.2d 108 (9th Cir. 1964); Billeci v. United States, 298 F.2d 703 (9th Cir. 1962); Titus v. The Santorini, 258 F.2d 352 (9th Cir. 1958). See also n. 10, infra.

Cir., 1964) thought it to be "ridiculous to apply the concept of unseaworthiness to such cases as these" (p. 663).

Now in 1967 confusion still reigns in a field wherein there is a vast amount of litigation in the federal courts—particularly in the seacoast circuits. There should be some uniformity of rule—not only in the interest of justice but also of fairly reasonable consistency. If the courts wish to create (actually by judicial legislation) a principle that any seaman injured on board a ship is entitled to recover and the only fact question which may be submitted to the jury is his contributory negligence, if any, the trial courts, shipowners, longshoremen and insurance companies at least will know the problems then facing them in and out of court.

But what has happened since *Alexander* and *Candiano* were argued (October 28, 1966 and December 13, 1966, respectively)?

On May 15, 1967 the Supreme Court denied certiorari in Foster v. Lykes Bros., 387 U.S. 908, 87 S.Ct. 1685, 18 L.Ed.2d 627, wherein the Fifth Circuit had affirmed the District Court's denial of a recovery to a seaman on the ground that negligence of a fellow longshoreman does not make a ship unseaworthy (368 F.2d 326).

On May 22, 1967, the Supreme Court decided *Mascuilli*, supra, in a brief *Per Curiam* opinion as follows:

> "The petition for a writ of certiorari is granted and the judgment is reversed. Mahnich v. Southern S.S. Co., 321 U.S. 96, 64 S.Ct. 455, 88 L.Ed. 561; Crumady v. The Joachim Hendrik Fisser, 358 U.S. 423, 79 S.Ct. 445, 3 L.Ed. 2d 413. [15 NCCA 2d 265]"

The finding of the trial court in *Mascuilli* was specifically noted by the Court of Appeals in its *Per Curiam* opinion, 358 F.2d 133 (3 Cir., 1966), the court stating that the trial court's findings, including the finding "that the accident was caused solely by the negligent operation of the stevedoring crew as stated in finding of fact #35," were not clearly erroneous.

On June 5, 1967, the Supreme Court denied certiorari in Fenton v. A. S. Glittre et al., 387 U.S. 944, 87 S.Ct. 2077, 18 L.Ed.2d 1331, wherein this Court had affirmed the dismissal of a complaint alleging injury caused by cargo falling because of the negligent handling of a crane by a fellow longshoreman (370 F.2d 146).

Petitioner in *Candiano* argues that these denials indicate that the Supreme Court did not intend to abolish the doctrine of "operational negligence" and petitioner in *Alexander* contends that *"Mascuilli* is not authority for the proposition that the doctrine of operational negligence has now been rejected by the Supreme Court as a factor in the determination of liability." (*Alexander*, Pet. p. 5.) What the law is today will depend upon the decisions of the future.

The time element in the operation is "obviously irrelevant." Practically no loading or unloading operation could be carried on which required a separate timekeeper for every man working in a gang. Assume that every timekeeper set his stop-watch at the commencement (according to his judgment) of the "operation," it still would be necessary for the courts to fix the period permitted to elapse, before operational negligence was transformed into unseaworthiness. And since notice to the shipowner is no longer of consequence, the time element is meaningless from the standpoint of giving the owner notice of, and an opportunity to remedy, the defect.[3]

Since the Spring of 1967, the Fifth Circuit has decided at least four cases in this field. Chronologically on May 9, 1967 the Court in Dugas v. Nippon Yusen Kaisha, 378 F.2d 271, affirmed a directed verdict in favor of the defendant where dunnage boards fell on the plaintiff. The hookup man (a fellow employee) had placed a single sling, instead of the required double sling, around the load

---

3. Mitchell v. Trawler Racer, Inc., 362 U. S. 539, 549, 80 S.Ct. 926, 4 L.Ed.2d 941 (1960); Alaska Steamship Co. v. Petterson, 347 U.S. 396, 74 S.Ct. 601 (1954).

which was being lowered. The Court rejected the argument that, during the 10 to 15 seconds which elapsed between the placing of the sling and the raising of the load with the resulting fall, an unseaworthy condition had been created. But, even assuming that there were an "unsafe condition" in this "momentary interval," the Court was satisfied that the Supreme Court's affirmance after two rounds of *Morales* (Morales v. City of Galveston, 275 F.2d 191 (5th Cir.), vacated and remanded, 364 U.S. 295, 81 S.Ct. 107, 5 L.Ed.2d 84 (1960); 291 F.2d 97 (5th Cir. 1961), aff'd 370 U.S. 165, 82 S.Ct. 1226, 8 L.Ed.2d 412 (1962)) required or at least permitted this result.

However, less than a week later (May 15, 1967), the same Fifth Circuit in a case where there was no claim of negligence but solely a question of an unexplained escape from the cargo sling of the steel beam which struck and injured the plaintiff, reached a quite different result. Marshall v. Ove Skou Rederi, A/S, 378 F.2d 193. The trial court had found that "the equipment used in the loading operation was not shown to be unseaworthy"; the appellate court found that the gear was properly operated and that there was no evidence of negligence by any of the participants in the operation. The court had difficulty in finding "transitory unseaworthiness"[4] saying, "But this accident occurred under the most antiseptic conditions possible. The winch was operated properly. The load struck nothing. The sling did not break. No new agency affected the sling. The loading operation was done without negligence. The sling simply did not perform its single assigned purpose of retaining the load without dropping it while moving it from point A to point B" (p. 198). The Court imposed liability because the shipowner must have been aware of "anticipated operating conditions." There

"the force and hazard to be incurred—single, obvious and great—by this cargo sling was the simple one of the force of gravity * * * which, unless guarded against by operating proficiency, would cause the tilled beam to slip from the sling and fall and hurt someone" (p. 198). Regardless of the Court's explanatory conclusion that "The present case is of failure of equipment to carry out its assigned function while in normal use in a situation of high and known hazard and without the effect of any external force or event," the decision actually would appear to stand for the proposition that: the accident happened, therefore the ship must be considered unseaworthy. Judge Rives' concurrence, relying on *Van Carpals* in this circuit and *Walker* and *Mills* in the Fifth, supports this conclusion: "There is simply no explanation for the accident, except either the choice of an improper method of loading or the unfitness of the sling used to lower the beam" (p. 202).[5] The first hypothesis, however, would appear to involve operational negligence; the second is not supported by the facts because the equipment was found by the trial court to be without defect and of the type customarily used for this operation.

To add to the confusion, the Fifth Circuit on April 13, 1967 had decided Antoine v. Lake Charles Stevedores, Inc., 376 F.2d 443 and Robichaux v. Kerr McGee Oil Industries, Inc., 376 F.2d 447. In *Antoine*, the plaintiff was injured when pinned against the side of the ship by a load being lowered into the hold. The trial court had concluded that "operational negligence" could not be characterized as "unseaworthiness" and dismissed the case. On appeal, the court affirmed. But, on the assumption that that court had never "expressed itself, until now [April 1967], in the specific area of 'operational negligence'," it then proceeded (after analyzing many cases)

4. For the origin of this concept, see Poignant v. United States, 225 F.2d 595, 597 (2d Cir. 1955). See also Grillea v. United States, 232 F.2d 919, 922 (2d Cir. 1956).

5. Van Carpals v. The SS American Harvester, 297 F.2d 9 (2d Cir. 1961); Walker v. Harris, 335 F.2d 185 (5th Cir. 1964); Mills v. Mitsubishi Shipping Co., 358 F.2d 609 (5th Cir. 1966).

to come to the conclusion that "It would serve no useful purpose to rehash the many decisions by the Supreme Court and the various Courts of Appeals since *Sieracki*, supra, (376 F.2d p. 446). However, since to that court "it does not appear that the Supreme Court has gone so far as to hold that the shipowner is liable for 'instant unseaworthiness', based upon the very act of a fellow longshoreman which causes the injury" (p. 445), the dismissal was affirmed. In *Robichaux*, the same panel remanded for specific findings as to whether the alleged negligence created an unseaworthy condition. In both cases as well as in the court's analysis of the Ninth Circuit cases, the time element was stressed, the court in *Robichaux* indicating that if "appellant was injured *after* the negligence took place, rather than at the time of the negligent act, the vessel would, under the law, be considered unseaworthy, Beeler v. Alaska Aggregate Corp., 336 F.2d 108 (9th Cir., 1964) and Blassingill v. Waterman Steamship Corporation, 336 F.2d 367 (9th Cir., 1964); otherwise not" (376 F.2d p. 449).

The time element ("momentary interval of time") stressed in *Antoine, Robichaux*, and *Dugas* as a determining factor was not mentioned in *Marshall*. There the element against which the shipowner should have guarded was said to be the force of gravity.

This "rehash" has probably been no more fruitful than the many previous reviews of cases by the various circuits searching for, but not finding, a rational basis for decision. The real difficulty in the future will arise at the trial level. If there are any facts to be determined by a jury other than assessment of damages and contributory negligence, how is the trial judge to charge? Is "operational negligence" to be mentioned at all? When does the "operation" commence? How momentary is a "momentary interval"? Is "instant negligence" to be added to "instant unseaworthi-

ness"? Many other similar questions undoubtedly will arise.

Some guidance from the Supreme Court in this area may be found at the end of the majority opinion in Mitchell v. Trawler Racer, Inc., 362 U.S. 539, 80 S.Ct. 926, 4 L.Ed.2d 941 (1960), where the Court, apparently unwilling to state affirmatively a rule of absolute liability, added a penultimate paragraph which has been used in whole or in part by almost every trial judge since 1960, either in the jury charge or in a non-jury decision. The Court, citing *Sieracki* [6] and *Mahnich*,[7] had just said that "the shipowner's duty to provide a seaworthy vessel" is "absolute" (*Mitchell*, p. 549, 80 S.Ct. p. 932). But the court straightway answered the question: what is the duty which is absolute?, by stating "it is a duty only to furnish a vessel and appurtenances reasonably fit for their intended use." Were a trial judge to follow *Mitchell*, a charge refreshingly simple could be made, in substance: "The shipowner is not obligated to furnish an accident-free ship but only a vessel and appurtenances reasonably fit and suitable for their intended use and service." Based upon the Supreme Court decisions between 1945 and 1960, the law may have been clear in 1960, namely, that a principle of "complete divorcement of unseaworthiness liability from concepts of negligence" (*Mitchell*, p. 550) had evolved, but this clarity has been considerably dimmed by appellate decisions between 1960 and 1967. Negligence would appear to create unseaworthiness from the very moment of the act. The words "reasonably fit" and "reasonably suitable" lose all significance if the happening of the accident in and of itself is regarded as an adequate demonstration that the ship was not in such condition. See *Marshall*, supra.

Both *Candiano* and *Alexander* under modern concepts of unseaworthiness present "unseaworthy" facts. Even though operational negligence created the unseaworthiness, it is difficult to find any

6. Seas Shipping Co. v. Sieracki, 328 U.S. 85, 66 S.Ct. 872, 90 L.Ed. 1099 (1946).

7. Mahnich v. Southern S.S. Co., 321 U.S. 96, 64 S.Ct. 455, 88 L.Ed. 561 (1944).

place for such a doctrine as a defense against liability, if the very finding of operational negligence is a simultaneous finding of unseaworthiness. The alchemy is instantaneous.

In summary *Mascuilli* may be explained on the basis of *Crumady*,[8] namely, that the safety circuit breaker was improperly set so that the controller did not trip and thus cut off the power. *Waldron*[9] (May 8, 1967) may have created a doctrine of unseaworthy seamen. The Fifth and Ninth Circuit cases speak of operational negligence and try to set up a momentary time theory. The Third and Fourth Circuits are virtually committed to an absolute liability doctrine.[10] Were *Candiano* to be resubmitted today, these intervening cases would only strengthen the conclusion that the negligent hook-up followed by "an appreciable period of time" (as found by the trial court) would create an unseaworthy condition. As to *Alexander,* the protruding dunnage alone would have produced a similar conclusion.

In my opinion, the whole process of straining to impose liability has become completely unrealistic. As a basis for decision, the term "unseaworthy" is utterly meaningless as Noah Webster defined the word. From the time notice to the shipowner of a defect with a reasonable opportunity to remedy it was written out of the law, the instances, to which the word unseaworthy has been applied, to my mind have advanced (or retrogressed) from the absurd to the ridiculous. However, believing the function of the courts to be adjudication in accordance with current applicable decisions (and not judicial legislation) I adhere to the decisions already rendered in *Candiano* and *Alexander* and, hence, believe that a rehearing by the Court would serve no useful purpose.

8. Crumady v. The Joachim Hendrik Fisser, 358 U.S. 423, 79 S.Ct. 445, 3 L.Ed. 2d 413 (1959).

9. Waldron v. Moore-McCormack Lines, 386 U.S. 724, 87 S.Ct. 1410, 18 L.Ed.2d 482 (1967).

10. Thompson v. Calmar, 331 F.2d 657 (3d Cir. 1964), cert. denied, 379 U.S. 913, 85 S.Ct. 259, 13 L.Ed.2d 184 (1964); Ferrante v. Swedish American Lines, 331 F.2d 571 (3d Cir. 1964), cert. dismissed, 379 U.S. 801, 85 S.Ct. 10, 13 L.Ed.2d 20 (1964); Scott v. Isbrandtsen, 327 F.2d 113 (4th Cir. 1964).